PEDRO MACIAS, Plaintiff-Appellee, v. INLAND STEEL COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 85—1840

Opinion filed August 26, 1986.

Robert S. Soderstrom, James P. DeNardo, and Sara E. Cook, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellant.

Bruce D. Goodman and David A. Novoselsky, both of Steinberg, Polacek & Goodman, of Chicago, for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Pedro Macias, brought this negligence action against defendant, Inland Steel Company (Inland), to recover damages for personal injuries sustained during the demolition of an Inland plant in Gary, Indiana. After a jury trial, judgment was entered against Inland in the sum of $800,000.

Inland's principal contentions are: (1) that the trial court erred by refusing to direct a verdict or enter a judgment *n.o.v.* in favor of defendant because plaintiff failed to establish any duty owed to him by defendant; and (2) that the court erred in denying defendant's post-trial motion.

Plaintiff was an employee of Harrison Iron and Metal Company (Harrison), which specialized in demolition work and, on previous occasions, did work for Inland. In 1974, Harrison contracted with Inland to demolish Inland's open-hearth shop. The contract stated that Harrison would "furnish necessary labor, supervision, [and] equipment *** [and that] all dismantling work is to be coordinated through the Inland Field Engineer." Certain railroad tracks that ran through the shop were still in use, so the contract specified that the track "must remain in operation at all times."

Harrison used a crane to dismantle the steel beams of the shop to prevent them from falling either to the ground or upon the tracks. However, there were times when the crane interfered with the track operation. At those times, Inland's senior project engineer, Anton Zaversnik, would order the crane moved in order to accommodate the cars running on the track.

The beams were dismantled by a cutting process. First, supporting cables were cut. Then, the cross beams were cut with a torch where they connected to a vertical beam. A "burning stub," about one-fourth inch to three-eighth inch, connecting the cross beam to the vertical beam, would be left to secure the cross beam. On some occasions, after the cutting process was complete, the crane would be attached to the beam and break the "burning stub," lowering it to the ground. About one-third of the time, the crane would be attached to the beam while cutting to prevent it from falling. Inland's project engineer exercised control over Harrison employees by supervising the length of the "burning stubs" and requiring the use of safety belts.

On November 18, 1984, plaintiff was working above the railroad tracks with his uncle, who was his partner and is now deceased. Plaintiff testified that the crane was located on the north side of the structure. He stated that he was in the process of wrapping the crane cables

around the arms of the cross beam when he was told by a person from Inland to stop. The crane was removed.

Macias testified that he continued to work overhead on the cross beams after the crane was removed. This was the practice from the time the demolition job started up to the date of the accident. Inland's supervising personnel observed this and did not discourage Harrison employees from continuing their demolition tasks, even in the absence of the supporting crane.

After Macias and his uncle partially cut the four cross beams, leaving the required burning stub, they descended to a lower level to do some additional work. The crane was expected to return and remove the angle irons, which were 20 feet above the men.

At this time, Macias heard a noise like steel screeching on steel away from where he had previously been partially cutting through the cross beams. He looked up, saw the cross beam at the northeast corner move, and tried to disconnect his safety belt to get away. Before he could do so, the beam ripped loose and struck him. The force carried him to the ground and the beam fell on top of his leg, pinning him to the floor of the plant.

The case went to trial on plaintiff's four-count, third amended complaint. The trial court granted defendant's motion for a directed verdict on all but the negligence count. That count alleged that defendant failed to provide a safe work place, failed to warn plaintiff of the dangerous condition of the hearth shop, directed work to be done in a manner that caused injury to plaintiff, and failed to properly supervise the work to be performed by plaintiff. Defendant filed an affirmative defense of contributory negligence, which would bar recovery under Indiana law.

Applying Indiana law, the jury returned a verdict for plaintiff in the sum of $800,000. Defendant appeals.

## I

■ There is no dispute regarding the application of Indiana law to the substantive issues of this case. Under Illinois conflict-of-law principles, the substantive law of the State with the most significant contacts with the occurrence applies. (*Jackson v. Miller-Davis Co.* (1976), 44 Ill. App. 3d 611, 616, 358 N.E.2d 328, *appeal denied* (1977), 65 Ill. 2d 581.) Procedural issues are governed by Illinois law. *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 435, 454 N.E.2d 754, *appeal denied* (1983), 96 Ill. 2d 561.

## II

Defendant first argues that the trial court should have granted its motion for a directed verdict or judgment *n.o.v.* because plaintiff failed to establish a duty owed to him by defendant. The cases cited by defendant, while a correct statement of Indiana law, are not applicable to the case before us. These cases relate to situations under which an owner may be liable to a contractor's employee for the negligent acts of a contractor or the contractor's employees. In the present case, plaintiff alleged that defendant was liable *for its own direct negligence*, not vicariously liable for the negligence of plaintiff's employer. This is the critical distinction upon which this case turns.

In this case, the verdict of the jury did not find Inland vicariously liable because of the negligent acts of Harrison. Inland's liability was based on its own negligence. Indiana law supports liability on this theory. In the leading case of *Hale v. Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316, commenting on an owner's liability, the court said:

> "One cannot escape liability for his *own* negligence by employing an independent contractor. [Citation.] A contractee has a duty to provide the employees of an independent contractor with a safe place to work, that is, an affirmative duty to exercise ordinary care to keep the property in a reasonably safe condition. [Citation.] The scope of this duty was clearly defined in *Jones v. Indianapolis Power & Light Co., supra*:
>
> > 'The law of this state is that a party in the position of Ipalco [the contractee] is obligated to take necessary steps to prevent injury to an independent contractor's employee only when such injury is reasonably foreseeable in light of the hazardous nature of instrumentalities *maintained by the party on his premises*.' [Citation.]
>
> The duty does not extend or relate to instrumentalities within the sole control of the independent contractor for the exclusive use of the contractor's employees. [Citations.]" 168 Ind. App. 336, 347-48, 343 N.E.2d 316, 324-25. (Emphasis in original.)

Notwithstanding the fact that an instrumentality belongs to an independent contractor, an owner may be liable for injury sustained thereby if the owner assumes control over it or has superior knowledge of the potential dangers involved in its operation. (*Plan-Tec, Inc. v. Wiggins* (Ind. App. 1983), 443 N.E.2d 1212, 1219.) This liability is based on the general rule of law that a duty of care may arise where one party assumes a duty of care either gratuitously or voluntarily. (443 N.E.2d 1212, 1219.) Thus, if an owner assumes a duty to provide

an independent contractor's employee a safe place to work by maintaining or operating an instrumentality owned by the contractor, actionable negligence may be predicated upon assumption of that duty. (443 N.E.2d 1212, 1219.) There is sufficient evidence to show that defendant both assumed control over the crane and had superior knowledge of the potential dangers involved in its operation. Defendant had authority to control the crane, which it exercised several times each day. Further, the crane was not used for the exclusive benefit of the independent contractor, but was used to clear the track for the uninterrupted operation of defendant's rail cars. The evidence supports the conclusion that defendant maintained control over the crane whenever it determined that it should be moved to accommodate its own freight movements.

The jury also heard evidence that the defendant had superior knowledge of the hazards involved in dismantling the beams without the use of the crane. Defendant's employee testified that no maintenance had been performed on the beams since 1967, that the beams exposed to the elements could be expected to rust and deteriorate if left unpainted, and that the beams were exposed to corrosive gasses. Inasmuch as defendant's employee was aware of the actual condition of the structure and the use of the crane as a safety device, he was in a superior position to know of the danger in dismantling the beams without the use of the crane.

Defendant's assumption of duty for the overall safety aspects of the project is supported by its providing a senior project engineer whose duties included issuing safety directives, requiring the use of safety belts by Harrison employees, and supervising the length of the "burning stubs." Anton Zaversnik's duties also included conducting hourly inspections of the overall project to ensure that defendant's safety rules were followed. He ensured that these rules were enforced by immediately bringing to Harrison's attention any unsafe work practices or hazards with directions to correct them.

Indiana, like Illinois, imposes a duty to act carefully upon one who assumes to act, even though gratuitously. In *Perry v. Northern Indiana Public Service Co.* (Ind. App. 1982), 433 N.E.2d 44, the court stated:

> "This, of course, is nothing new to our law as shown by the well-reasoned Illinois Supreme Court case of *Nelson v. Union Wire Rope Corp.*, (1964) 31 Ill. 2d 69, 199 N.E.2d 769, where Klingbiel, C.J. said: 'Originating with the decision of *Coggs v. Bernard*, 2 Lord Raymond 909, it has come to be a recognized principle that liability can arise from the negligent performance

of a voluntary undertaking. In our times, a clear and oft-cited statement of the principle is the language of Justice Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276, 23 A.L.R. 1425, when he said: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of action carefully, if he acts at all." ' " 433 N.E.2d 44, 50.

Adopting the "assumption of duty" test accepted in Illinois, the court in *Perry* concluded that the duty of the owner could not be resolved as an issue of law but must be left to the jury to make "that ultimate decision upon trial." 433 N.E.2d 44, 50.

The evidence is sufficient, in the words of the *Perry* court, to give the jury a basis to determine that defendant assumed a duty to inspect and control the safety of the work at this jobsite and, therefore, assume liability for its own negligent acts.

■ The trial court properly denied defendant's motion for a directed verdict and its alternative motion for a judgment *n.o.v.* under the well-recognized standards imposed by *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. The same conclusion is also supported under Indiana law. *McDaniel v. Sage* (Ind. App. 1981), 419 N.E.2d 1322, 1323.

### III

Defendant contends that the trial court erred in instructing the jury to consider the "nature, extent and duration" of plaintiff's injuries and the "disability and disfigurement resulting from the injury" in fixing damages. It cites the Illinois case of *Powers v. Illinois Central Gulf R.R. Co.* (1982), 91 Ill. 2d 375, 438 N.E.2d 152, in support of its argument. Damages are a substantive matter to be determined under Indiana law. Therefore, *Powers* is not applicable.

There is controversy over whether this alleged error is properly preserved for review. We conclude that defendant has not met the burden placed on appellants in *Auton v. Logan Landfill, Inc.* (1985), 105 Ill. 2d 537, 475 N.E.2d 817, and *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E. 2d 337.

■ In addition, the instruction does not appear to be prejudicial under Indiana law. Indiana Pattern Jury Instruction 9.01 does provide that "nature and extent" of the injury is an element of damages. Instruction 9.01(b) may be given for "disfigurement or deformity." Defendant is not entitled to a new trial on the basis of this instruction.

## IV

■ Defendant contends that instructions dealing with its duty to defendant and proximate cause were erroneous and warrant a new trial. We disagree. The issue of duty was dealt with extensively under part II of this opinion. There is a dispute as to whether the instruction on duty was tendered by defendant and, therefore, waives any assignment of error, or whether it was given at the joint request of the parties. Under either set of circumstances, we conclude that defendant was not prejudiced.

Defendant's post-trial motion merely alleges that the proximate-cause instruction was erroneous without articulating any specific basis. Consequently, the post-trial motion is not sufficient to preserve the claimed error. *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-49, 415 N.E.2d 337.

## V

■ Defendant next contends that plaintiff's commentary on its special interrogatory dealing with contributory negligence was improper and required a new trial. Defendant argues that when plaintiff's counsel told the jury "they're going to give you a special interrogatory," the jury was informed of the source of the interrogatory in violation of *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468. At a sidebar, counsel said his reference to "they" meant "the court," and on rebuttal, he told the jury the court would submit the special interrogatory to the jury.

Defendant also argues that under *Sommese,* plaintiff's counsel's comments on the effect of the special interrogatory to the general verdict was error. In reviewing the record, we conclude that plaintiff did not request the jury to conform its answer to the special interrogatory to the verdict, but rather urged the jury, based on the evidence, to answer the interrogatory in favor of the plaintiff. Such remarks are proper. *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716; *Burns v. Howell Tractor & Equipment Co.* (1977), 45 Ill. App. 3d 838, 360 N.E.2d 377, *appeal denied* (1977), 66 Ill. 2d 625.

## VI

■ We find no error in defendant's claim that expert testimony presented on behalf of plaintiff was improper. Defendant had a full opportunity, which it exercised, to cross-examine the expert and point out what it perceived to be a lack of factual basis for his opinions. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.

## VII

Defendant argues that it was error to allow the deposition testimony of Anton Zaversnik to be read into evidence when he was allegedly available for live testimony. The record indicates that Zaversnik, age 72, had been subpoenaed but the court was presented with evidence that he was too ill to testify in person. Both parties agreed that the court would telephone him to determine whether he could attend the trial. After speaking to him, the court determined that the deposition would be used.

■ We find that defendant consented to the court's decision in this matter. Defendant never requested the court to take further steps to secure Zaversnik's presence. A party waives his right to complain of an error where to do so is inconsistent with the position taken by him earlier. See, *e.g., Auton v. Logan Landfill, Inc.* (1985), 105 Ill. 2d 537, 543, 475 N.E.2d 817.

■ Defendant next complains of the allegedly over-dramatic reading of Zaversnik's deposition by plaintiff's co-counsel. However, the record indicates that after defendant objected to the reading, the trial court cautioned counsel to read the deposition in a normal voice. Thus, we find no error.

## VIII

Finally, defendant attacks the jury's finding of damages, claiming that the award was palpably excessive in light of the proof. Defendant argues that plaintiff only suffered a fractured leg from which he made a good medical recovery. However, the record reveals that plaintiff had undergone numerous surgical procedures following the accident. He continues to have pain in his back and leg as a result of the injury. His injured leg is five-eighth inch shorter. He walks with a limp and continues to take medication. Although he was able to return to work, it is under lighter duties which pay less. Plaintiff has restricted employment opportunities in the future because of his permanent disability. Expert economic testimony placed plaintiff's loss of earnings at $469,202.

■ In light of plaintiff's deformity, drastically changed lifestyle, economic loss, and pain and suffering, we conclude that the verdict of the jury is not so large as to shock the judicial conscience. *Lapidus v. Hahn* (1983), 115 Ill. App. 3d 795, 803, 450 N.E.2d 788.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and SCARIANO, JJ., concur.