FRANK K. PHELPS *et al.*, Plaintiffs-Appellees, v. MICHAEL J. O'MAL-
LEY, Defendant-Appellant.

Second District   No. 2—86—0849

Opinion filed August 3, 1987.—Rehearing denied August 28, 1987.

Rathje, Woodward, Dyer & Burt, of Wheaton (Peter A. Zamis, of counsel), for appellant.

Portes, Sharp, Herbst & Kravets, Ltd., of Chicago (David I. Herbst, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

On June 30, 1979, plaintiffs, Frank K. Phelps and Robert W. Topping, entered into a contract to purchase 10 enumerated lots in Trinity Lakes Unit II, an Oak Brook, Illinois, subdivision, from defendant, Michael J. O'Malley. The contract price was $800,000. Plaintiffs paid $80,000 earnest money to defendant. The deal never closed, though, and defendant subsequently sold the lots to other purchasers, declaring that plaintiffs had forfeited their earnest money.

Plaintiffs brought this action for return of the earnest money plus compensatory damages. After a bench trial, the trial court found that defendant had breached the contract by failing to substantially perform the prerequisites necessary for setting the transaction for closing. The trial court awarded plaintiffs $387,500, representing the $80,000 earnest money and $307,500 as the difference between the contract price and the fair market value of the lots at the time of the breach. The court also awarded $12,000 as prejudgment interest on the earnest money from the time of the breach. Defendant appeals, arguing that he substantially performed the prerequisites necessary for setting the transaction for closing, that the prejudgment interest award was improper, and that plaintiffs' expert witness should not have been allowed to testify because he had not been disclosed prior to trial in violation of Supreme Court Rule 220 (103 Ill. 2d R. 220). We affirm the trial court on the first two issues, but find that plaintiffs' expert should not have been allowed to testify.

■■ ■ The trial court found that defendant breached the contract by failing to substantially perform the prerequisites necessary for setting the transaction for closing. Defendant acknowledges that a determination of whether the provisions of a contract have been substantially performed depends on the particular facts of a given case and that the trial court's findings thereon will not be disturbed unless contrary to the manifest weight of the evidence. (*Luczak Brothers, Inc. v. Generes* (1983), 116 Ill. App. 3d 286, 299.) For a judgment to be against the manifest weight of the evidence, it must appear that an opposite conclusion is clearly evident. (*J. R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 636.) Such a conclusion does not appear clearly evident in this case.

At the time the contract was signed, defendant had not yet developed the Trinity Lakes Unit II subdivision to a point where the village of Oak Brook would issue building permits for the lots in question. At plaintiffs' insistence, therefore, the contract included the following clause:

> "The date of closing shall be 45 days after notice is given to Purchaser by Seller that Seller has complied with all requirements of the Village of Oak Brook that are conditions precedent to the issuance of a building permit by the Village."

Subsequent to entering into the contract with plaintiff, defendant, through his corporation, Swissco, Inc., entered into a subdivision improvement agreement with the village of Oak Brook. The agreement contained the following provision regarding the issuance of building permits:

"9. It is agreed that no building permit shall be granted by any Village official for the construction of any structure until required utility facilities have been installed and made ready to service the property; and that roadways providing access to the subject lot or lots have been constructed or are in the course of construction and are suitable for vehicular traffic. It is understood and agreed that building permits may be granted for buildings on specific lots to which utility facilities have been installed and are operative and to which roadway access is suitable for vehicular traffic, notwithstanding the fact that all improvements within the subdivision may not be completed."

On May 7, 1982, defendant sent notice to plaintiffs that the village requirements with respect to issuance of building permits on the lots in question had been met and set a closing date of June 21, 1982. There does not seem to be any question as to whether the required utility facilities had been installed when defendant sent the aforementioned notice. There is conflicting evidence, however, of whether the roadways providing access to the lots were suitable for vehicular traffic on May 7, 1982, or on June 21, 1982. There is also a dispute as to whether defendant was required to submit "as built" drawings to the village prior to issuance of building permits.

Defendant argues that the trial court misconstrued the subdivision agreement by requiring that the roadways servicing the lots be completed, rather than just suitable for vehicular traffic. The record, however, does not support this argument.

Plaintiff Topping testified that upon receipt of defendant's letter, he called the Oak Brook village engineer, Dale Durfey, to confirm that building permits would issue. Durfey advised Topping that permits could not yet be issued, so Topping called defendant to relay Durfey's information. Defendant replied that there were only a few details to clear up and that he would do so.

Topping testified that he contacted Durfey again a few weeks later and again was informed that permits could not yet be issued. Topping advised Phelps of the problem, and Phelps also called Durfey. Durfey then sent a letter to Phelps on July 8, 1982, confirming that the village requirements were not satisfied.

In the meantime, the closing date had passed. Defendant's son testified that he received no indication from plaintiffs that they would not be closing, and that he had waited for plaintiffs at the title insurance company on June 21, 1982, to no avail. The parties dispute the amount of contact after that date. It does seem clear, however, that defendant did not again notify plaintiffs that the village requirements for issu-

ance of building permits had been met.

Plaintiffs later noticed excavation on some of the subject lots. Defendant had sold the first of the lots to other purchasers on July 1, 1983, and eventually sold all the lots. Defendant also notified plaintiffs that they were in default and forfeited their earnest money.

Durfey testified that it was the responsibility of the village engineering department to determine whether the roadways were suitable for vehicular traffic as required by the subdivision agreement. Durfey testified that "suitable for vehicular traffic" meant "constructed of some type of material" as opposed to a dirt surface. Durfey did admit that traffic used the roadways in question in May and June 1982. On redirect examination, however, he testified that the only traffic in May and June 1982 was construction traffic necessary to build the roadways and utilities and that the roads were unsurfaced at that time. He further testified that the roads were not surfaced until July 15, 1982. He concluded that the earliest building permits could have been issued was August 8, 1983, when "as-built" drawings for the lots in question were approved.

Defendant produced conflicting testimony from John Ezzi, a civil engineer who was project manager for Trinity Lakes. Mr. Ezzi testified that the roadways were suitable for vehicular traffic as early as late April or early May 1982. At that time, curb and gutter systems had been installed. He later admitted, however, that the roads were unsurfaced until June 16, 1982, and that it was not until July 1982 that all the roadways in question received surface materials.

It thus appears that the trial court was presented with conflicting evidence as to the suitability of the roads in question for vehicular traffic at the time defendant sent the notice to plaintiffs. Where the judgment of the trial court is not accompanied by findings of fact, the presumption is that the trial court found all issues and controverted facts in favor of the prevailing party. (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 707.) Here, then, we assume that the trial court found that the roadways in question were not suitable for vehicular traffic when defendant notified plaintiffs that the village requirements for issuance of building permits had been met. The conflicting testimony of Durfey and Ezzi required resolution of a credibility issue, and the trial court apparently accepted Durfey's testimony over Ezzi's. As it has been said many times before, the trial court is in a far better position to determine the credibility of witnesses and to resolve inconsistencies in testimony. (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333.) As such, this court will not substitute its judgment on these matters unless the find-

ings are against the manifest weight of the evidence. (133 Ill. App. 3d 327, 333.) Since it does not appear that the trial court's finding that defendant had not substantially performed the prerequisites necessary for setting the transaction for closing is against the manifest weight of the evidence, the finding that defendant breached the contract is affirmed.

The above analysis also disposes of defendant's argument that it was not necessary to submit "as-built" drawings in order to obtain building permits. Even if this court were to conclude that "as-builts" were not necessary, defendant had not constructed the roadways to the required stage at the time he sent notice to the plaintiffs. He had thus not fulfilled his contractual obligation even if submission of "as-builts" was not a necessary prerequisite to obtaining building permits.

Defendant also argues that plaintiffs had a duty to advise him that he was not in compliance with the village requirements when they learned of that fact. This contention, too, must fail.

Even if plaintiffs had such a duty, there was evidence adduced at trial that plaintiffs did so notify defendant. Plaintiff Topping testified that when he received defendant's notice, he attempted to verify with Durfey that the village requirements had been met. Topping went on to testify that, upon being informed that all the requirements had not been met, he notified defendant of this. Topping testified that defendant replied that there were only a few minor problems which he (defendant) would take care of. Although defendant contends that plaintiffs should have shown him Durfey's letter of July 8, 1982, plaintiffs could have reasonably believed from defendant's prior statement that he knew what the deficiencies were. Thus, defendant's lack of notice argument is not supported by the record.

■ Defendant further argues that the trial court erred by not permitting him to inquire of plaintiffs' financial status as of June 21, 1982. Such argument is meritless in this case, since defendant had not yet performed his specific obligations under the contract. The failure of defendant to perform the conditions precedent to closing excused tender of the purchase price, and it therefore became immaterial whether plaintiffs had sufficient funds in order to tender the purchase price. (*Hart v. Lyons* (1982), 106 Ill. App. 3d 803, 807.) The trial court thus did not err in refusing to allow defendant to question whether plaintiffs were financially able to close on June 21, 1982, since they were not obligated to close then.

The trial court held that plaintiffs are entitled to prejudgment interest on the $80,000 earnest money pursuant to section 2 of "An Act in relation to the rate of interest and other charges in connection with

sales on credit and the lending of money" (Ill. Rev. Stat. 1985, ch. 17, par. 6402), which provides in pertinent part:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing *** ."

■ Defendant argues that the court improperly awarded prejudgment interest because there was a genuine and reasonable dispute between the parties, citing *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, and *Grandview Development Co. v. Finley Enterprises, Inc.* (1977), 46 Ill. App. 3d 848. In those cases, however, there was a dispute over the *amount* due, while here the dispute was whether payment was due at all. Contrary to defendant's assertions, a good-faith dispute as to whether payment was due does not preclude an award of prejudgment interest (*Kemnetz v. Elliott Farmers Grain Co.* (1985), 136 Ill. App. 3d 226, 231), at least where the sum due is fixed or easily ascertainable. *Spagat v. Schak* (1985), 130 Ill. App. 3d 130, 137.

The real estate contract on which plaintiffs base their claim is an instrument in writing under the above-quoted statute. (*Spagat v. Schak* (1985), 130 Ill. App. 3d 130, 138.) Furthermore, the amount of earnest money due was a sum certain. The trial court's award of interest on that amount was thus proper under the statute. 130 Ill. App. 3d 130, 138.

■ Defendant's most compelling argument concerns the testimony of Clarence Bruckner, the real estate appraiser called as an expert witness by plaintiffs to render his opinion of the market value of the subject lots. Plaintiffs retained Bruckner in March 1985, 14 months prior to trial, yet did not disclose that they planned to call him as a witness until trial. Defendant had filed a document he captioned "supplemental interrogatories" on April 16, 1986, specifically requesting the names and addresses of plaintiffs' expert witnesses. This request was neither answered nor objected to, and at the beginning of trial defendant moved for sanctions under Supreme Court Rule 219(c). (87 Ill. 2d R. 219(c).) The motion was denied.

Bruckner was subsequently called at trial by plaintiffs. Defendant objected and sought to debar Bruckner from testifying under Supreme Court Rules 219 and 220. (103 Ill. 2d Rules 219, 220.) The trial court reserved ruling on defendant's motion, but adjourned the trial to give defendant an opportunity to depose Bruckner. After Bruckner was deposed, trial resumed, and defendant renewed his motion to debar the witness. The motion was denied, and Bruckner testified as to his opin-

ion of the value of the lots on July 1 and August 8, 1983.

Defendant argues here that the trial court erred in allowing Bruckner to testify since he had not been disclosed as an expert prior to trial. We agree. Supreme Court Rule 220 provides in pertinent part:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." 103 Ill. 2d R. 220(b).

Even prior to the adoption of Rule 220, section 2—1003(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1003) required, upon motion of any party, disclosure of the identity of expert witnesses to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties. The section was intended to "facilitate trial preparation and the evaluation of claims by eliminating the last-minute disclosure of experts on the courthouse steps or during the course of trial." (Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 438 (Smith-Hurd 1985).) The committee recognized the salutary objectives of the legislation and the necessity that both plaintiff and defendant be adequately advised regarding the critical opinions which may be offered in support of their opponent's claims or defenses. The committee also recognized, however, that those objectives were often not met, noting decisions in which the expert's late or surprise testimony was allowed to the opponent's prejudice (*Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559; *Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799; *Burns v. West Chemical Products, Inc.* (1973), 12 Ill. App. 3d 947); opinions were refused to the detriment of the party offering them (*Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1); trials have been continued (*Beasley v. Huffman Manufacturing Co.* (1981),

97 Ill. App. 3d 1; *Plost v. Louis A. Weiss Memorial Hospital* (1978), 62 Ill. App. 3d 253); or where the allowance or denial of the testimony produced reversible error requiring retrial (*Brown v. Highland Park Hospital* (1979), 69 Ill. App. 3d 769; *Mendelson v. Feingold* (1979), 69 Ill. App. 3d 117). (Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 438-39 (Smith-Hurd 1985).) Rule 220 was therefore adopted in an attempt to eliminate these evils by establishing a uniform, but not inflexible, framework for the timely revelation of the identity of expert witnesses and the subject matter of their testimony. Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 439 (Smith-Hurd 1985).

The case before us is a classic example of the type of situation which Rule 220 was designed to eliminate. Plaintiffs knew well in advance of trial that proof of damages would be a crucial portion of their case. They were fully aware of the need to produce expert testimony of the value of the subject real estate at the time of the breach, and to that end they retained Bruckner to appraise the property. Yet even though plaintiffs retained their expert witness 14 months before trial, even though they had numerous opportunities to comply with Rule 220 when the trial was continued seven times, and even though specifically requested to disclose any expert witnesses, plaintiffs did not disclose Bruckner's identity until trial had begun.

In adopting Rule 220, our supreme court has indicated its desire to eliminate the aforementioned evils caused by such surprise disclosures. Rule 220 thus provides a specific sanction if the identity of an expert is not properly disclosed. The rule mandates: "Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein *will result in disqualification of the expert as a witness.*" (Emphasis added.) (103 Ill. 2d R. 220(b)(1)). Given this clear direction, the trial court erred in allowing Bruckner to testify. We do not believe that debarring Bruckner from testifying is too harsh a sanction for the violation of Rule 220. In *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, our supreme court stated:

"Our discovery procedures are meaningless unless a violation entails a penalty proportionate to the gravity of the violation. Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances. ***

Disclosure is the object of all discovery procedures. It is the opinion of this court that trial courts should make disclosure a reality."

We are aware that a trial court, in determining whether to

impose sanctions, must seek to accomplish discovery rather than to inflict punishment. (*Unity Ventures v. Pollution Control Board* (1985), 132 Ill. App. 3d 421, 433.) We must also consider, however, "the need for using discovery sanctions as a general deterrent which will provide a strong incentive for *all* litigants to fully and accurately comply with discovery rules [citation]." (Emphasis in original.) (*Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 514.) Given the gravity of the consequences of nondisclosure of an expert, plus the explicit sanction set forth in the rule, disqualification of Bruckner as an expert would have been appropriate. We hold that whenever a trial court determines that an expert witness has not been disclosed in violation of Rule 220, the witness should be debarred from testifying unless to do so would create a manifest injustice.

██ █ Plaintiffs argue that the trial court should have broad discretion in deciding the appropriate sanctions for discovery violations, citing *Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168. The *Fischer* court, in upholding the trial court's disqualification of the plaintiff's undisclosed expert witness, did indicate that it would not interfere with a trial court's imposition of sanctions absent a showing of abuse of discretion. (147 Ill. App. 3d 168, 172.) In our view, however, the trial court's discretion under Rule 220 is narrow. Prior to the adoption of Rule 220, sanctions for discovery violations were listed in Rule 219(c). In imposing sanctions under Rule 219(c), trial courts are allowed discretion, and such decisions should not be interfered with on review absent an abuse of that discretion. (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 368.) Rule 220, on the other hand, does not list a range of possible sanctions as does Rule 219. The only sanction provided for in Rule 220 is disqualification of the expert witness, and the trial court's discretion is thus severely limited. We feel such limited discretion is appropriate. If each instance of nondisclosure of an expert is treated uniquely, litigants and trial courts will be faced with the same uncertainties mentioned above. Our decision removes those uncertainties.

██ █ Even if we were to employ the review standards of Rule 219 to the case at hand, we would still conclude that the trial court abused its discretion in allowing Bruckner to testify. Under Rule 219, several factors are usually considered in determining whether the exclusion of a witness is an appropriate sanction for nondisclosure. These factors include: the surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony and the good faith of the party calling the witness. (*Ashford v. Ziemann* (1984), 99 Ill. 2d

353, 369.) A reviewing court must look to the factors on which the trial court was to rely in making its determination of an appropriate sanction in order to determine if the trial court abused its discretion. 99 Ill. 2d 353, 369.

It should first be noted that Rule 220 does not require an opponent to request an expert's identity. It would thus seem that the diligence of defendant here should be of less importance than in those cases which require affirmative discovery action by a party seeking to debar a witness. Rule 220 sets forth specific disclosure dates in no way dependent on an opposing party's request. Even if this factor is deemed important, defendant did request disclosure 40 days prior to trial.

██ Defendant here also made a timely objection to Bruckner's testimony. Defendant specifically requested that Bruckner be debarred before any opinion was offered, and renewed the motion after Bruckner's deposition had been taken.

The surprise to defendant is apparent. There is no indication that defendant had any idea Bruckner would be called as a witness. Furthermore, "[a] deposition taken [shortly] before the testimony is given does not obliterate the surprise factor in light of the fact that the time factor prevents the testimony from being investigated." (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 370.) Time is needed prior to trial to investigate the credentials of proposed expert witnesses and to discuss the substance of the expert's testimony with one's own experts in order to properly prepare for cross-examination. (*Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 376.) It appears that defendant here did not have an adequate opportunity to investigate Bruckner's appraisal or obtain an expert of his own during the adjournment.

The prejudicial effect of Bruckner's testimony is also plain. Without an opinion as to the market value of the lots at the time of the breach, plaintiffs could not prove contract damages and would have been limited to return of their earnest money. Admission of Bruckner's testimony thus prejudiced defendant to the tune of $307,500, a substantial prejudice to be sure. It is also clear that the nature of Bruckner's testimony is the crux of plaintiffs' damage claim.

Finally, we turn to the good faith of the party calling the witness. As defendant notes, plaintiffs retained Bruckner over 14 months prior to trial. The trial was also continued several times, and on none of these occasions did plaintiffs disclose Bruckner's identity. Even when specifically requested to disclose any expert witnesses, plaintiffs did not do so. Under these circumstances, it is difficult to ascribe good faith to plaintiffs' failure to comply with Rule 220.

We thus hold that the trial court erred in allowing Bruckner to tes-

tify when he had not been disclosed, in violation of Supreme Court Rule 220. We do not approve of the procedure employed here, that of adjourning trial while Bruckner could be deposed by defendants. Such delays disserve the parties, the courts and the legal profession. The imposition of sanctions for nondisclosure will encourage compliance with Rule 220. Disclosure of experts will aid in the trial and settlement of cases and is fair to the litigants involved, being applicable to plaintiffs and defendants alike.

In summary, the trial court's finding that defendant did not substantially perform the conditions precedent to setting the transaction for closing is not contrary to the manifest weight of the evidence. Plaintiffs were thus not obligated to close at the time defendant sold the lots to other purchasers. There is evidence that plaintiffs did advise defendant of his noncompliance, assuming that they even had a duty to do so. The award of prejudgment interest on the earnest money involved a sum certain and a written instrument and was not in error.

The trial court did err, however, in allowing Bruckner to testify. Once a court finds that an expert witness has not been disclosed according to Supreme Court Rule 220, the witness shall be disqualified as an expert unless to do so would create a manifest injustice. No such injustice is present here. The situation presented here is exactly what Rule 220 was meant to eliminate.

The portion of the award based on Bruckner's testimony, the difference between the contract price and market value at the time of the breach of $307,500, is vacated. Rather than remand this cause for a new trial on the issue of damages, pursuant to this court's powers under Supreme Court Rule 366 (107 Ill. 2d R. 366) we set plaintiff's damages according to the evidence of the actual sales prices introduced by defendant. Defendant sold the lots for $1,087,000, leaving a difference of $287,000 between the actual market value and the contract price. Including the $80,000 earnest money and prejudgment interest thereon in the amount of $12,000, plaintiffs are entitled to a judgment of $379,000. We therefore remand this cause to the circuit court of Du Page County with directions to enter judgment for plaintiffs in that amount.

Affirmed in part, reversed in part and remanded.

LINDBERG, P.J., and INGLIS, J., concur.