MICHAEL KOSINSKI, Plaintiff-Appellee, v. INLAND STEEL COMPANY, Defendant-Appellant.

First District (4th Division) No. 1—88—1843

Opinion filed December 28, 1989.

JIGANTI, P.J., specially concurring.

French, Rogers, Kezelis & Kominiarek, P.C., and Kevin G. Burke and Dennis A. Ferraro, both of Cassiday, Schade & Gloor, both of Chicago (David C. Burtker, of counsel), for appellant.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Leslie J. Rosen, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Inland Steel Company (Inland) appeals from judgment entered against it upon a jury verdict in the amount of approximately $235,000 finding Inland liable for personal injuries suffered by plaintiff Michael Kosinski (Kosinski). Upon review, we affirm, finding that: (1) the trial court properly denied Inland's motion for a directed verdict at the close of Kosinski's case in chief; (2) the trial court did not abuse its discretion when it denied Inland's motion to bar testimony of Kosinski's medical expert for Kosinski's alleged violation of Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220); (3) remarks by Kosinski's counsel in closing argument regarding a special interrogatory pertaining to Kosinski's alleged contributory negligence were not reversible error; and (4) the trial court did not abuse its discretion when it permitted one of Kosinski's exhibits, a jar containing graphite, to be taken into the jury room.

The evidence presented by Kosinski in his case in chief established the following pertinent facts. At the time of Kosinski's injury on June 17, 1976, Kosinski was employed by Three Star Construction Company (Three Star) as an apprentice ironworker. Three Star had been awarded a subcontract to erect pipe supports on plant property owned by Inland in East Chicago, Indiana. Kosinski and other Three Star journeymen ironworkers had been working to erect these supports on the roof of an Inland slabbing mill for approximately two weeks prior to Kosinski's injuries. The mill was used to process steel. The steel processing caused the mill to emit an impurity, known as graphite, which accumulated on the mill roof. The mill operated on a 24-hour basis throughout the time Three Star worked to erect steel pipe supports on the mill roof.

The ironworking crew employed by Three Star, including Kosinski, noticed the graphite on the sloped roof, and noticed that the graphite caused the roof to be more slippery than normal. Screws had been placed in the roof by the ironworking crew, as was their customary procedure on any roof job, and these screws allowed the crew to obtain a more secure footing despite the graphite. Kosinski testified that if graphite accumulated to the level of several inches in the area

where he was working, he would remove it with a shovel, since its presence in such an amount rendered it impossible to perform his work. Kosinski stated that if the graphite were only a light coat on the roof, he would take no action to remove it.

Inland's safety manual for outside contractors specified that it was the contractor's responsibility to clean up debris caused by the contractor's work on Inland property. Inland's safety guidelines for its own employees directed that employees should be alert to maintaining a clean and orderly workplace, especially with regard to "traction robbing" substances. Robert Feckler, Inland's field engineer who checked Three Star's work progress, and who was on the roof when Kosinski was injured, testified that, in his experience and based on Inland's safety manuals, it was the responsibility of a contractor to maintain its workplace regardless of the source of any waste or debris, including graphite. Michael Oliver, an Inland safety engineer, testified that based upon his experience at Inland, it was "implied" that the contractor would be responsible for the condition on the contractor's worksite, regardless of the source of the debris, including graphite.

The day on which Kosinski was injured was warm and sunny. Hugh Orr, Three Star's temporary steward that day, noticed that the graphite was particularly slippery because of the warm weather. He complained to Three Star's superintendent about this condition, but was told to return to work. Orr did not complain to Inland regarding the presence of the graphite on the roof. Kosinski arrived for work at 8 a.m., and he and the other members of his crew proceeded to erect steel beams above a portion of the slabbing mill roof that was sloped at a 30° angle and was covered with a thin coat of graphite. Because the portion of the roof on which the crew was working was close to an Inland office building, the crew foreman decided that, in order to hoist the beams to the roof, it would be necessary to position a Three Star crane over a section of Inland railroad track. Inland personnel complained of this location of the crane, and insisted that the ironworkers speed up their work so that the crane could be moved as soon as possible. The ironworkers attempted to comply with this directive from Inland personnel.

The location of the Three Star crane rendered it impossible for the ironworkers to lower a metal beam directly into place on the slabbing mill roof. As a result, once a beam had been raised by the crane, the ironworkers would manually pull the beam into position. Each metal beam weighed approximately 1,200 to 1,500 pounds. Kosinski, who was directed to work alone at one end of the beam, would hold the beam in place with one arm and use a spud wrench to facilitate

attachment of the beam to a separate piece of structural steel that had already been placed upon the roof. As Kosinski was doing so, a beam with which he had been working slid out of position. Kosinski attempted unsuccessfully to replace the beam in its proper position. He then turned to his left in an effort to avoid the beam as it began to fall. The graphite prevented him from obtaining a secure footing, however, and the beam fell upon his right leg and left foot, injuring him.

Kosinski was taken to St. Catherine Hospital in East Chicago, Indiana, where he was seen and treated by Dr. D.A. Campagna. It was determined that Kosinski had sustained compound, comminuted fractures in his right leg, and simple fractures in his left foot. The leg fractures were placed in their proper position without surgery, and a cast was placed upon the leg from Kosinski's hip to ankle. His left foot was later placed in a cast after his transfer to a hospital in Illinois.

Dr. Campagna, Kosinski's original treating physician, testified that, at the time of Kosinski's injuries, a considerable portion of his private practice was concentrated in industrial and accident medicine and surgery, including the treatment of injuries sustained by ironworkers. Dr. Campagna testified that when he examined Kosinski again in February 1988, Kosinski complained of pain in his right leg and hip, of instability in his right leg, and restricted motion in his right ankle. Dr. Campagna found that Kosinski's right leg was three-eighths of an inch shorter than his left leg, and that his right calf was three-fourths of an inch smaller in circumference than his left calf. The physician testified that these disabilities, caused by Kosinski's accident at the Inland slabbing mill in June 1976, would be permanent. Dr. Campagna also testified that it would be "risky" for Kosinski to return to work as an ironworker, since it would be difficult, and sometimes impossible, for Kosinski to do most of the climbing associated with such work.

Kosinski returned to work for Three Star at the Inland slabbing mill several months after his injury. Kosinski stated that he ceased working as an ironworker in 1984, and eventually took employment selling insurance, since most of the ironworking jobs available were ones he could not perform because of his leg and foot injuries. Kosinski testified that his income since the injury has been substantially less than what he would have received had he continued doing the kind of ironworking job allocated to him prior to his accident.

Dr. David Fischer, a medical physician specializing in orthopedic surgery, examined Kosinski on March 16, 1984, and reviewed records

pertaining to Kosinski's medical treatment. Dr. Fischer testified that Kosinski's right leg was one-half inch shorter than his left leg and was bowed outward at approximately 20° beyond normal. Kosinski's right calf had atrophied and was one inch smaller in circumference than his left calf. His right ankle was also twisted approximately 15° from normal alignment. Dr. Fischer stated that these circumstances caused Kosinski's right leg to appear to be 1¼" shorter than his left leg. He testified that it also caused Kosinski to walk with a limp and rendered Kosinski to be predisposed to injury, back pain, and future degeneration of the knee and ankle. Dr. Fischer stated that these disabilities were permanent and made it hazardous for Kosinski to return to employment as an ironworker. He also testified that surgery to correct the improper angulation of Kosinski's leg and ankle might alleviate the extent of Kosinski's disabilities.

Donald Carter, who was the general foreman for Three Star at the time of Kosinski's accident, testified on behalf of Inland. Carter stated that, to the best of his recollection, no Three Star worker ever complained to him about the graphite on the slabbing mill roof. Carter also testified that Three Star, because it had its own tools and equipment to do so, would clean graphite off the roof whenever the graphite accumulation caused the roof to become slippery and hazardous.

Based upon this evidence, the jury returned a verdict in favor of Kosinski that awarded him $235,458.12 in damages, apportioned as follows: $135,000 for disability and disfigurement; $90,000 for pain and suffering; $1,908.12 for medical expenses; and $8,550 for lost time and earnings. The jury answered in the negative a special interrogatory that asked, "Was the Plaintiff, at or near the time of the occurrence complained of, guilty of contributory negligence which was a proximate cause of the Plaintiff's injuries or damages?" The trial court entered judgment in conformance with the jury's verdict and denied Inland's motion for a new trial. Inland's timely appeal followed.

## I

Inland argues that the trial court erred in its denial of Inland's motion for a directed verdict at the close of Kosinski's case in chief. The parties agree that Indiana law governs the substantive issues presented in the cause. "Under Illinois conflict-of-law principles, the substantive law of the State with the most significant contacts with the occurrence applies. [Citation.] Procedural issues are governed by Illinois law. [Citation.]" *Macias v. Inland Steel Co.* (1986), 147 Ill. App. 3d 411, 414, 497 N.E.2d 1206.

■ Inland argues its safety manuals established that Inland did not assume the legal obligation to inspect or maintain a safe condition at Three Star's worksite. We need not consider this contention. Kosinski's negligence suit was also based upon Inland's alleged breach of a legal duty imposed upon Inland by Indiana common law. Under Indiana common law, "a landowner has a common law duty to exercise due care to keep his property in a reasonably safe condition for business invitees, including employees of independent contractors. [Citations.]" *(Howard v. H.J. Ricks Construction Co.* (Ind. App. 1987), 509 N.E.2d 201, 205.) Thus, a landowner in Indiana "has an affirmative duty to exercise ordinary care to keep his property in a reasonably safe condition coextensive with the purpose and intent of the implied invitation." *(Howard v. H.J. Ricks,* 509 N.E.2d at 205.) However,

> " 'there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. \*\*\* [W]here the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, \*\*\* where the condition is one \*\*\* which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it.' " *(Broadhurst v. Davis* (Ind. App. 1970), 255 N.E.2d 544, 545-46, quoting W. Prosser, Torts §61, at 402 (3d ed.) (1964).)

Indiana law in this regard reflects the principles stated in sections 343 and 343A of the Restatement (Second) of Torts. (Restatement (Second) of Torts §§343, 343A (1965).) With respect to the liability of a landowner to an invitee for an open and obvious danger, the Restatement (Second) notes:

> "There are \*\*\* cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, \*\*\* where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. [Citation.] It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts §343A, comment *f*, at 220 (1965).

Inland maintains that the slippery condition on the slabbing mill roof was open and obvious to Kosinski, and that it therefore had no duty to clean the roof of any graphite accumulation. We disagree. In our view, the danger of slipping on the graphite, although known to Kosinski, was a hazard which Inland should reasonably have foreseen Kosinski would choose to encounter because the advantages of Kosinski's doing so, in order to complete Three Star's work at Inland's slabbing mill, would outweigh the apparent risk.

■ Inland also argues that Kosinski's injuries occurred because Three Star failed to "secure adequate and proper equipment (*i.e.*, a longer boom on the crane) in order to continue to erect and set the structural I-beam directly in place by use of the crane." Inland asserts that because the crane was the instrumentality that caused Kosinski's injuries, and because the crane was in the exclusive control of Three Star, Kosinski's injuries were not proximately caused by any breach of a duty owed by Inland to Kosinski. We disagree with Inland's premise that Kosinski's injuries were proximately caused by the improper use of Three Star's crane. Kosinski testified that the presence of graphite on the roof prevented him from avoiding the beam as it fell from position. Consequently, the evidence introduced by Kosinski, when viewed in the light most favorable to him, demonstrated that the slippery condition resulting from graphite on Inland's mill roof was a proximate cause of Kosinski's injuries. As stated above, we conclude that Inland had a duty to maintain its slabbing mill roof in a reasonably safe condition for Kosinski's work on the roof. It was the province of the trier of fact to determine whether Three Star's failure to use the proper crane was also a proximate cause of Kosinski's injuries.

For these reasons, we conclude that the trial court properly denied Inland's motion for a directed verdict. (See *Pedrick v. Peoria &*

*Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Based upon the review of the record, and in response to the argument made by Inland in its reply brief on appeal, we also determine that the judgment was not against the manifest weight of the evidence.

II

Inland argues that the trial court erred in denying its motion to bar Dr. William B. Fischer from testifying because of Kosinski's failure to seasonably identify Dr. Fischer as an expert witness in violation of Illinois Supreme Court Rule 220. We disagree.

The record shows that in March 1984, Dr. Fischer examined Kosinski, reviewed pertinent medical records, and prepared a written report to his findings and conclusions regarding Kosinski's injuries. Approximately two years later, on April 9, 1986, Kosinski's attorney informed Inland in writing that he intended to have Kosinski "evaluated by Dr. Donald Miller, an orthopod." On January 27, 1988, approximately a year and a half later, and less than two weeks prior to February 8, 1988, the date on which the cause was set for trial, Kosinski's counsel provided Inland with the medical report prepared by Dr. Fischer in March 1984 and informed Inland that Kosinski intended to call Dr. Fischer as an expert witness.

Because of a conflict in the trial judge's calendar, the trial was rescheduled for March 3, 1988, and began on that date. On the first day of trial, Inland represented, for the first time, its motion to exclude Dr. Fischer's testimony. Since Inland had been aware for more than a month that Kosinski intended to call Dr. Fischer as an expert witness, but failed to motion for the medical expert's disqualification until the first day of trial, the trial court declined to enter an order *instanter* that would exclude the testimony. The trial court suggested as an alternative that Inland depose Dr. Fischer, and that the court would reserve its ruling on Inland's motion to exclude the physician's testimony until Dr. Fischer would be called as a witness. Inland declined the court's invitation to formally depose Dr. Fischer, and informed the trial judge that Inland had arranged with Kosinski's counsel to interview Dr. Fischer, outside the presence of Kosinski's counsel, before Dr. Fischer would testify at trial. Thereafter, when Dr. Fischer was called to testify on behalf of Kosinski, Inland did not renew its motion *in limine* to exclude his testimony or object to his testifying at trial.

■■■ Initially, we conclude that Inland has waived error with respect to the trial court's decision to permit Inland the opportunity to depose Dr. Fischer prior to his trial testimony. The record shows that Inland acquiesced in the trial court's arrangement that Inland ques-

tion Dr. Fischer prior to trial and inform the trial court if Inland found such questioning insufficient to present its defense at trial. A party cannot claim error in a trial court's ruling when the party has acquiesced in that disposition. See *Fischer v. G&S Builders* (1986), 147 Ill. App. 3d 168, 173, 497 N.E.2d 1022; see also *Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 205, 526 N.E.2d 450; *Crawford County State Bank v. Grady* (1987), 161 Ill. App. 3d 332, 339-40, 514 N.E.2d 532.

Even assuming *arguendo* that the question has not been waived, we determine that the trial court did not abuse its discretion when it permitted Inland the opportunity to depose Dr. Fischer, rather than excluding the medical expert's testimony at trial. Illinois Supreme Court Rule 220 provides:

> "In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. * * * All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. * * * Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (107 Ill. 2d R. 220(b)(1).)

Rule 220 must be read in conjunction with Illinois Supreme Court Rule 219, however, which provides that when a party fails to comply with Rule 220:

> "[T]he court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:
>
> (i) that further proceedings be stayed until the order or rule is complied with;
>
> * * *
>
> (iv) that a witness be barred from testifying concerning that issue[.]
>
> * * *
>
> In lieu of or in addition to the foregoing, the court may order that the offending party or his attorney pay the reasonable expenses, including attorney's fees incurred by any party as a

result of the misconduct ***." (107 Ill. 2d R. 219(c).)
It is well established that the trial court's determination of the appropriate sanction for violation of discovery rules is a matter within its sound discretion and will not be disturbed upon review, absent an abuse of that discretion. See, *e.g.*, *Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 205, 526 N.E.2d 450.

It is clear that Kosinski's counsel violated Rule 220 in his failure to seasonably inform Inland that Dr. Fischer would testify as a medical expert on Kosinski's behalf at trial, and we do not condone the laxity toward Rule 220's requirements that was displayed by Kosinski's counsel in the case at bar. However, disqualification of a medical expert is not the only sanction that the trial court may, in its discretion, impose for a violation of Rule 220. We have previously held that, depending upon the circumstances of a particular case, the sanction of a continuance to permit deposition of the expert may be " 'an acceptable response.' " (*Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 205, 526 N.E.2d 450, quoting *Fischer v. G&S Builders* (1986), 147 Ill. App. 3d 168, 173, 497 N.E.2d 1022, citing *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 442 N.E.2d 241.) We do not believe that the trial court's selection of a sanction other than disqualification of the expert witness automatically renders Rule 220 ineffective, especially in view of Rule 219's specific inclusion of several alternative sanctions as proper remedies for a violation of Rule 220. See *Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 533 N.E.2d 22.

Given the facts of the case at bar, we find that the trial court did not abuse its discretion in suggesting that, rather than enter an order *instanter* to bar Dr. Fischer's testimony, Inland first depose Dr. Fischer prior to his testifying at trial. The record shows that Inland never expressed an interest in deposing the medical expert, Dr. Miller, whom Kosinski's attorney had disclosed well before trial. In addition, Inland was aware for more than a month that Kosinski intended to call Dr. Fischer as an expert witness, but failed to motion for the medical expert's disqualification until the first day of trial. By permitting Inland the opportunity to depose Dr. Fischer prior to his trial testimony, and to inform the court if such deposition would be inadequate for Inland to present a full defense at trial, the trial court obviated any surprise or prejudice to Inland resulting from Kosinski's tardy disclosure of Dr. Fischer as an expert witness. (*Cf. Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224-25, 511 N.E.2d 974 (expert witness should be barred from testifying where litigant will be surprised and prejudiced by tardy disclosure under Rule 220).) "Had the facts shown that [Kosinski's] expert presented a novel theory to which

[Inland] could not sufficiently respond \*\*\*, a motion to bar that expert's testimony would have been in order." (*Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 4, 442 N.E.2d 241.) Inland does not contend that it was unable or impeded in its efforts to defend itself with respect to Dr. Fischer's testimony. In view of the circumstances in the case at bar, we conclude that the trial court's disposition of Inland's motion to bar Dr. Fischer's testimony was proper.

We also believe that, based upon the admission of Dr. Fischer's testimony, Inland has not shown prejudice sufficient to grant Inland a new trial. Dr. Fischer's testimony was essentially cumulative to that of Dr. Campagna. Both doctors stated the nature and extent of Kosinski's injuries and his resulting disabilities. Consequently, even if we were to accept Inland's claim of error with respect to the violation of Rule 220, we do not find it sufficient ground to grant a new trial. See, *e.g.*, *Fear v. Smith* (1989), 184 Ill. App. 3d 51, 539 N.E.2d 1297.

## III

■ Inland contends that certain remarks by Kosinski's counsel in closing argument regarding the special interrogatory pertaining to Kosinski's alleged contributory negligence were reversible error. These remarks were:

> "If you listen to what negligence is and what he was doing, because what they are telling you, and if you answer that interrogatory any way other than no, then you are saying this accident is [Kosinski's] fault and he can't recover, if you answer it any way other than no."

Inland acknowledges that these comments are virtually identical to those found permissible in *Burns v. Howell Tractor & Equipment Co.* (1977), 45 Ill. App. 3d 838, 360 N.E.2d 377. Inland argues that *Burns* is "nothing more than a semantical change from what is prohibited" in *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468. In *Sommese*, the Illinois Supreme Court found reversible error in comments made by counsel during closing argument that had the effect of "improperly alert[ing] the jury to the fact that its decision to assess damages would be nullified by an affirmative answer to the interrogatory." (36 Ill. 2d at 267-68.) The court reasoned that as a result, "the safeguard against a jury awarding damages out of passion or prejudice or sympathy without first making specific factual determinations and then applying the law thereto was thwarted." 36 Ill. 2d at 268.

Contrary to Inland's argument, our adherence to the holding of

*Burns,* and our approval of the comments of Kosinski's counsel during closing argument, will not emasculate the pronouncement of the Illinois Supreme Court in *Sommese.* The remarks of Kosinski's attorney did not alert or emphasize to the jury that an award of damages to Kosinski would be nullified by an affirmative answer to the interrogatory, but advocated that the jury, upon its review of the evidence, should answer the interrogatory in favor of Kosinski. Consequently, we find no error in the comments of Kosinski's attorney during closing argument. Our holding is consistent with other decisions that have adhered to the ruling of *Burns.* See, *e.g., Blevins v. Inland Steel Co.* (1989), 180 Ill. App. 3d 286, 535 N.E.2d 972; *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 518 N.E.2d 205; *Macias v. Inland Steel Co.* (1986), 147 Ill. App. 3d 411, 497 N.E.2d 1206.

## IV

■ Inland argues that the trial court abused its discretion when it permitted one of Kosinski's exhibits, a jar containing graphite, to be taken into the jury room. Because Kosinski's counsel told the jury during closing argument that the jury should "[f]eel [the graphite], put it on your hands, it won't be easy to come off, but put a little on your hands," Inland contends that there was a danger the jury would experiment with the graphite or attempt to recreate the accident. (See *Main v. Ballymore Co.* (1983), 116 Ill. App. 3d 1040, 449 N.E.2d 169.) We can find no abuse of discretion in the trial court's ruling in the case at bar, since it was unlikely that the jury would attempt to recreate the circumstances surrounding Kosinski's accident in order to perform an independent experiment thereof. Even assuming *arguendo* that the evidence should not have been permitted in the jury room during deliberations, we cannot discern in what manner the jury's examination of the graphite deprived Inland of a fair trial. See, *e.g., Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 504 N.E.2d 772.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, specially concurring:

In concluding that the trial court did not err in refusing to bar Dr. Fischer's testimony pursuant to Supreme Court Rule 220 (107 Ill. 2d

R. 220), the majority ignores relevant facts and adopts an interpretation of the rule which renders it utterly ineffective. However, because Dr. Fischer's testimony was cumulative and resulted in no prejudice to Inland, I agree with the majority that a new trial is not warranted.

A reading of the language of Rule 220, quoted by the majority, reveals that its disclosure requirement is clear and specific. The obvious import of the rule is that discovery be completed, at the very latest, 60 days before trial. Although, as the majority notes, the trial court may in its discretion impose sanctions other than disqualification, the fact that the rule explicitly states that failure to disclose "will result in disqualification of the expert as a witness" appears to indicate that the court's discretion is "severely limited," at least when faced with a clear and egregious violation of the rule. See *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224, 511 N.E.2d 974, 981.

The record in the case at bar reveals just such a clear and egregious violation of Rule 220. Kosinski had a medical report prepared by Dr. Fischer dated March 21, 1984. Approximately two years after the date on the report, on April 9, 1986, Kosinski's counsel responded to Inland's Rule 220 interrogatories by stating that "it is my present intention to have plaintiff evaluated by Dr. Donald Miller, an orthopod." Apparently, Dr. Miller never evaluated Kosinski. On January 27, 1988, 13 days before the anticipated trial date, Kosinski provided Inland with the four-year-old medical report prepared by Dr. Fischer. Kosinski suggested that the discovery violation was inadvertent.

Instead of focusing on the egregious nature of Kosinski's violation of Rule 220, the majority focuses its attention on Inland's reaction to the violation, criticizing Inland for waiting too long to present a motion to exclude Dr. Fischer's testimony and for failing to depose him in the short time remaining before trial. The prospect of such last-minute depositions was one of the evils sought to be remedied by Rule 220. (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974.) In my view, the interpretation placed upon Rule 220 by the majority completely undermines its effectiveness as a tool for ensuring fair and adequate discovery. Under the facts presented in this case, I believe that the trial court abused its discretion in allowing Dr. Fischer to testify.