JOHN W. FLYNN, Plaintiff-Appellee, v. ERWIN COHN *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—89—3322

Opinion filed September 20, 1991.—Rehearing denied November 19, 1991.

Erwin Cohn & Associates, of Chicago (Erwin Cohn, *pro se*, and Charles A. Cohn, of counsel), for appellants.

Regas, Frezados & Harp, of Chicago (Peter G. Frezados, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, judgment was entered in favor of plaintiff, John W. Flynn, and against defendant, Erwin Cohn, on plaintiff's action for an accounting after the dissolution of a law partnership and on defendant's counterclaim. Defendant now appeals and we consider: (1) whether it was against the manifest weight of the evidence to find that the partners did not have a dissolution agreement; (2) whether it was against the manifest weight of the evidence to find that defendant was not entitled to an accounting from plaintiff for profits allegedly overpaid during the partnership; (3) whether plaintiff's expert should have been barred from testifying when plaintiff failed to properly disclose him; (4) whether it was against the manifest weight of the evidence to accept the accounting of plaintiff's expert; (5) whether the finding that defendant was not entitled to compensation for the winding-up of partnership business was erroneous; and (6) whether defendant was prejudiced when the trial judge changed his previous ruling striking certain portions of defendant's counterclaim. For the following reasons, we affirm.

In 1971, plaintiff and defendant entered into an oral partnership agreement to practice law and to divide the expenses and profits equally. During the partnership, plaintiff generally handled divorce, real estate, and commercial cases receiving hourly fees or retainers. Defendant generally handled personal injury and workers' compensation cases receiving contingent fees. Both partners brought cases into the firm, and if a case involved the other partner's area of concentration, that partner handled the case. No time records were kept on the amount of time a partner worked on a case, and no record was kept of the cases each partner brought into the partnership. On April 1, 1987, after 16 years of partnership, plaintiff and defendant agreed to dissolve. During the winding-up period after dissolution, they each generally handled the cases they brought into the partnership. Plaintiff handled 37 cases which generated $37,000 in fees, and defendant handled approximately 140 cases which generated $531,233 in fees. The facts stated above are essentially undisputed between the parties.

Shortly after dissolution, plaintiff filed a complaint for an accounting to recover his share of the fees received on the partnership's cases after dissolution.

Defendant answered the complaint and filed a five-count counter-claim, only four counts of which are relevant on appeal. In count I, defendant sought an accounting from plaintiff alleging plaintiff was overpaid during the partnership because he did not share the work. In count II, defendant alleged that the partnership's assets should be distributed according to a dissolution agreement entered into when they formed the partnership. In count IV, defendant alleged that the partnership's assets should be distributed according to a contract implied in fact, exhibited by their conduct after dissolution. In count V, defendant alleged that the partnership's assets should be distributed according to a dissolution agreement entered into when the partnership dissolved. As a remedy for the counterclaim, defendant requested judgment that each partner was entitled to receive the fees on the cases he retained after dissolution to the exclusion of the other partner.

Initially, an evidentiary hearing was held to determine whether an accounting was required and whether the partners had an agreement to divide the partnership's assets in the event of dissolution.

Plaintiff testified that when he and defendant formed the partnership, they agreed to a "50/50 partnership" but did not discuss dissolution. Subsequently, when they agreed to dissolve the partnership, they could not reach an agreement as to how to divide the partnership's assets. Plaintiff wanted to continue their partnership agreement to share expenses and profits on the remaining cases equally, but defendant wanted to retain the fees on the cases he was handling at the time, which were the personal injury and workers' compensation cases. Some of those cases were brought into the firm by plaintiff, including a medical malpractice case which was expected to generate a large fee.

Defendant testified that he and plaintiff reached a dissolution agreement when they formed the partnership. At that time, they agreed if the partnership was dissolved, each partner would retain the cases he brought into the partnership. However, if a case was brought into the partnership by one partner and handled by the other, the partner who was working on the case had the option to retain it. They also agreed to share the workload equally. Defendant testified that although no record was kept, they generally knew which cases they brought into the partnership.

Defendant further testified that when they subsequently agreed to dissolve the partnership, plaintiff was not satisfied with their original dissolution agreement because defendant would retain the partnership's high percentage of personal injury cases. He testified that after

some discussion, they agreed each partner would pay the costs and retain the fees on the cases he handled after dissolution.

The trial judge did not find one partner's testimony more credible than the other but stated defendant's testimony on the terms of the dissolution agreement was "equivocal." The judge found it was more likely than not that they did not have a dissolution agreement and, as a result, the partnership's assets would be equally divided according to the original partnership agreement. The judge ordered both plaintiff and defendant to prepare an accounting of the partnership's cases indicating expenses incurred and fees received after dissolution. The trial continued for the accounting aspect of the case and defendant's counterclaim.

Plaintiff testified that during the partnership, although he and defendant focused their cases on different areas of the law, they shared the work on all the partnership's cases. Court appearances and depositions were divided on an *ad hoc* basis depending on who was available. At defendant's request, plaintiff agreed to work on more of defendant's cases.

Defendant testified, however, that plaintiff generally did not work on his cases. Plaintiff would only handle an occasional deposition on a personal injury case and would never work on a workers' compensation case, although they were the majority of the partnership's cases. Despite defendant's request for more assistance, plaintiff did not handle personal injury cases.

Defendant also testified he prepared his own accounting of the partnership cases he handled after dissolution but admitted that he omitted the workers' compensation cases.

When plaintiff called his expert, Nicholas Burke, to testify at trial, defendant objected because plaintiff failed to disclose his identity until one week earlier, violating Supreme Court Rule 220 (134 Ill. 2d R. 220). The trial judge asked defendant whether he wanted to take Burke's deposition before he testified, and defendant initially expressed concern it would delay the hearing but then offered to take the deposition that day. The judge stated that if defendant wanted to take the deposition, trial would not proceed that morning. Defendant then offered to take the deposition that morning and trial was continued to the afternoon. After the deposition, Burke testified at trial without further objection from defendant under Rule 220.

Burke, a certified public accountant, prepared plaintiff's accounting and testified he had experience accounting for law partnerships with contingent fee cases.

Burke determined the partnership's overhead allowance was 62.64% of gross income based on its tax returns for the previous five years. To prepare the accounting, Burke used the following formula to determine each partner's share of overhead incurred on cases after dissolution:

$$\text{fee} \times \frac{62.64 \times A \times 50\%}{B} = C$$

A—number of months case pending after dissolution

B—total number of months case pending

C—each partner's share of overhead incurred after dissolution

The result was deducted from the fee received on a case and credited to the partner who handled the case after dissolution. The formula determined the overhead incurred on a case after dissolution in relation to how many months the case was pending. Burke explained this formula reimbursed the partner who handled the case after dissolution for the other partner's share of the overhead incurred after dissolution. The remaining fee was divided equally between the partners. Using this formula, Burke concluded that defendant was entitled to $319,383 and plaintiff was entitled to $248,850 of the fees received after dissolution. Burke testified that the formula was not necessarily beneficial to plaintiff, who handled fewer cases than defendant and whose files were completed earlier than defendant's cases after dissolution.

Defendant's expert was Robert Vladem, who was also a certified public accountant. Vladem did not have experience accounting for the dissolution of a law partnership involving contingent fee cases and he did not prepare an accounting for defendant. Although he reviewed the accounting prepared by defendant, he did not have an opinion as to its propriety.

Vladem disagreed with several aspects of the formula Burke used in plaintiff's accounting. Vladem testified that the partnership's overhead, which Burke calculated at 62.64%, should have included expenses from the partners' individual tax returns, which raised it to 65%. Also, the overhead should not have been weighted by the number of months a case was pending, as Burke's formula did, because the fee received was not similarly based on the number of months a case was pending. This violated the matching principle of accounting. Vladem also disagreed with the 50% multiplier in the formula which Vladem claimed reduced the overhead based on the number of partners in the firm.

In addition, Vladem testified that the cases defendant handled after dissolution generated 80% of the partnership's income while the cases plaintiff handled generated 20%. Because defendant's cases generated more income, Vladem presumed defendant also incurred more overhead and, therefore, a compensation factor should be applied to reimburse defendant for the additional overhead he incurred. The compensation factor was 30%, which was half the difference of the income generated between the partners.

For his formula to apply to the accounting, Vladem testified that 65% of a fee received on a case should be credited to the partner who handled the case after dissolution, leaving 35% of the fee. Ordinarily, the partners would share the remaining fee equally, each receiving 17.5%. However, when the compensation factor of 30% was applied to the remaining 35% of the fee, an adjustment of 10.5% was required, increasing defendant's share to 28% and decreasing plaintiff's share to 7%.

Vladem admitted that his formula effectively double charged both partners for overhead but the partner who incurred the overhead could deduct it from his taxable income. This benefitted the partner who had the most cases after dissolution and double charged the partner who did not work on the case after dissolution for overhead. Under Vladem's formula, defendant was entitled to $474,483 and plaintiff was entitled to $93,750 of the fees received after dissolution.

In rebuttal, Burke explained the 50% multiplier in his overhead calculation. During the partnership, the partners divided the overhead equally; however, after dissolution, the partner who handled the case incurred all of the overhead. Applying the 50% multiplier to the overhead reimbursed the partner who handled the case for the other partner's share of the overhead incurred after dissolution. Burke also testified that Vladem's formula double charged overhead to the partner who did not handle the case after dissolution. Burke reviewed the accounting defendant prepared and found it contained a number of mathematical errors and omitted certain cases.

The judge found in favor of plaintiff and against defendant on each count of the counterclaim. The judge also found plaintiff's expert, Burke, was more credible than defendant's expert, Vladem, and accepted Burke's formula to apply to the partnership's accounting. The judge rejected defendant's accounting because it omitted several cases and ordered defendant to prepare an amended accounting using Burke's formula.

Defendant now appeals.

# I

Defendant initially challenges the trial judge's finding that the parties did not enter into an agreement to divide the partnership's assets in the event of dissolution, contrary to the allegations of counts II, IV, and V of defendant's counterclaim. As a result of the finding, the partnership's assets were divided equally between plaintiff and defendant according to their original partnership agreement.

The decision of a trial judge after a bench trial will not be reversed on appeal unless it was against the manifest weight of the evidence. (*In re Application of County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506.) "A judgment is not against the manifest weight merely because there is sufficient evidence to support a contrary judgment. [Citation.] Rather, to satisfy that standard the opposite conclusion must be clearly evident ***." (*Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 509, 557 N.E.2d 383, 386.) The judge, as the trier of fact in a bench trial, is in the best position to determine the witnesses' credibility and the weight of their testimony and to resolve conflicts in the testimony. *County Treasurer*, 131 Ill. 2d 541, 546 N.E.2d 506.

Defendant contends the evidence at trial proved the allegations of counts II and V of his counterclaim that he and plaintiff orally agreed that, in the event of dissolution, they would retain the fees on the cases they were handling at the time. In count II, defendant alleged they entered into the agreement at the time they formed the partnership, and in count V, he alleged they entered into the agreement again when they dissolved the partnership.

Plaintiff testified that when he and defendant formed the partnership in 1971, they did not discuss dissolution. Defendant, on the other hand, testified that at that time, they agreed if the partnership dissolved, they would each retain the cases they brought into the partnership and, in addition, could retain any cases they were working on that were brought in by the other partner.

Plaintiff also testified that when they dissolved the partnership, he wanted to continue the partnership agreement and divide the expenses and profits of the remaining cases equally. He testified defendant wanted each partner to pay the expenses and retain the fees of the cases he was working on at the time. They could not reach an agreement. Defendant testified, however, that after some discussion

when the partnership dissolved, they agreed each partner would retain the fees received on the cases he was working on at the time.

■■ The testimony of plaintiff and defendant directly contradicted each other on whether they entered into an oral dissolution agreement at any time. The judge resolved the conflicting testimony in plaintiff's favor, finding that there was no dissolution agreement, and this finding was supported by the evidence. Although there was testimony supporting defendant's position, his position is not clearly evident from the record as is required to reverse the judge's finding. Therefore, the finding was not against the manifest weight of the evidence.

■■ In a related argument, defendant contends the evidence established the allegations of count IV of his counterclaim, that their conduct after dissolution exhibited a contract implied in fact. "[A] contract implied in fact arises *** by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound." (*Century 21 Castles by King, Ltd. v. First National Bank* (1988), 170 Ill. App. 3d 544, 548, 524 N.E.2d 1222, 1225.) Defendant relies on their conduct after dissolution of retaining the cases they were handling at the time and the fees received on those cases. The trial judge correctly found this conduct was insufficient to establish a dissolution agreement, and this finding was not against the manifest weight of the evidence.

## II

Defendant also argues that the trial judge erred in denying his request for an accounting from plaintiff for profits overpaid to him during the partnership, as alleged in count I of his counterclaim. Defendant alleged plaintiff breached the partnership agreement because he did not share the workload of the partnership equally prior to the dissolution and, therefore, plaintiff was overpaid.

As stated previously, the trial judge's decision will not be reversed unless it was against the manifest weight of the evidence. *County Treasurer*, 131 Ill. 2d 541, 546 N.E.2d 506.

Plaintiff testified that they agreed to a "50/50 partnership" and that during the partnership, he and defendant shared the work on all the cases, regardless of who was handling the case. Defendant testified that they specifically agreed to share the workload equally. He also testified that plaintiff only occasionally worked on the personal injury cases and never worked on the workers' compensation cases, which were the majority of the partnership's cases. During the part-

nership, no time records were kept on the amount of time a partner worked on a file.

■ Defendant relies on the fact that after dissolution he handled more cases than plaintiff; however, this fact does not address the amount of time each partner devoted to those cases before dissolution. Defendant also relies on his accounting, which showed that during the last five years of the partnership, his cases generated the most income. However, defendant's accounting was rejected by the trial judge, partially because it was inaccurate.

This issue was dependent on the trial judge's resolution of conflicting testimony. Plaintiff's testimony and the fact that the partnership did not keep time records supports the judge's ruling against defendant on count I of his counterclaim. Therefore, the ruling was not against the manifest weight of the evidence.

### III

Defendant also argues that plaintiff's expert should have been barred from testifying because plaintiff failed to properly disclose him as required under Supreme Court Rule 220.

■ Supreme Court Rule 220(b)(1) requires a party to disclose the identity of an expert witness, retained to give an opinion at trial, either within 90 days after the expert's opinion first becomes known to the party or at the first pretrial conference, if the opinion is known at the time, whichever is later. (134 Ill. 2d R. 220(b)(1).) Failure to disclose an expert witness within the time period will result in the disqualification of the expert as a witness. 134 Ill. 2d R. 220(b)(1).

■ Defendant relies on *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974, to support his argument that Burke should have been disqualified under Rule 220. In *Phelps*, defendant moved to bar plaintiff's expert under Rule 220 and, in response, the trial judge allowed defendant to depose the expert before he testified. After the deposition, defendant renewed his motion but the motion was denied and the expert was allowed to testify at trial. On appeal, the court found that defendant's objection was timely because he moved to bar the expert before he was scheduled to testify and subsequently renewed the motion after the deposition. The court held that allowing defendant to depose the expert shortly before trial did not cure the Rule 220 violation and the expert's testimony should have been barred.

The facts of *Phelps*, however, can be distinguished from the present case. Here, although defendant raised an objection under Rule 220, he offered to depose Burke shortly before his testimony and al-

lowed Burke to testify at trial without further objection under Rule 220. Defendant's objection was not timely under *Phelps*.

This case is analogous to *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 549 N.E.2d 784, where defendant also objected to plaintiff's expert under Rule 220 and offered to informally interview the expert. The judge reserved his ruling on the objection. After the interview when the expert testified at trial, defendant did not renew his objection. On appeal, the court found that defendant waived the error when he acquiesced to the interview and did not renew his Rule 220 objection.

In this case, similar to *Kosinski*, defendant offered to depose Burke after he objected to Burke's testimony under Rule 220 and did not renew his objection when Burke was subsequently called to testify at trial. This must have led the trial judge and plaintiff to believe that defendant was satisfied with the deposition and had abandoned his objection under Rule 220. Under these circumstances, defendant waived any objection he had to the timeliness of the disclosure.

IV

Defendant argues the trial judge erred when he accepted the formula advanced by plaintiff's expert, Burke, to use in the accounting of the partnership's cases.

In a bench trial, the judge must resolve conflicts in the testimony, and his decision will not be reversed on appeal unless it was against the manifest weight of the evidence. *County Treasurer*, 131 Ill. 2d 541, 546 N.E.2d 506.

Burke determined that the historical overhead percentage of the partnership was 62.64% of gross income. His formula apportioned the overhead incurred on a case between the months the case was pending before and after dissolution. One-half of the overhead incurred on a case after dissolution was credited to the partner who handled the case after dissolution. Burke testified this procedure reimbursed that partner for the other partner's share of the overhead incurred on the case after dissolution. The remaining fee was divided equally between plaintiff and defendant. Burke prepared plaintiff's accounting using this formula.

Defendant argues Burke's formula violates an accounting method he claims the supreme court adopted in *In re Estate of Barbera* (1973), 55 Ill. 2d 235, 302 N.E.2d 302. *Barbera* involved the accounting of a law partnership that dissolved with the death of a partner. The surviving partner handled the partnership's pending cases during the winding-up period. The supreme court found the record supported

an overhead allowance of 60% of the total fees collected after dissolution and allocated the overhead to the surviving partner. Defendant argues that Burke's formula to allocate overhead is inconsistent with *Barbera*; however, *Barbera* did not adopt a specific method to allocate overhead to the exclusion of other methods.

Defendant also argues that the trial judge ignored the testimony of his expert, Vladem, who criticized Burke's formula. Vladem testified that the overhead percentage was actually 65%, rather than 62.64%, because he included additional expenses. He also testified that Burke's formula violated the matching principle of accounting. Vladem explained that the overhead incurred on a case should not have been weighted by the number of months it was pending because the fee generated was not similarly dependent on the number of months a case was pending. Also, the overhead incurred on a case after dissolution should not have been divided in half because that had the effect of reducing overhead when the number of partners increased.

■ Despite Vladem's criticism, the trial judge found that Burke's testimony was more credible than Vladem's and his decision was supported by the evidence. Burke had experience accounting for law partnerships involving contingent fee cases, unlike Vladem. Burke's formula fairly reimbursed each partner for overhead incurred on cases after dissolution and distributed the expenses and profits according to the partnership agreement. Although on appeal defendant abandoned his support of Vladem's compensation factor, it disregarded the partnership's overhead percentage and credited defendant for additional post-dissolution overhead based on the presumption that defendant incurred more overhead because his cases generated more income. Apparently, it was an attempt to give defendant extra compensation and discredited Vladem's testimony. Additionally, Burke prepared plaintiff's accounting and supported its conclusions with his testimony while Vladem did not have an opinion of the propriety of defendant's accounting. Burke also testified defendant's accounting contained mathematical errors.

The trial judge was in the best position to resolve the conflicts between the experts' testimony and determine their credibility. The judge's decision to accept Burke's testimony was supported by the record and was not against the manifest weight of the evidence.

## V

Defendant also argues that the trial judge erred when he ruled that defendant was not entitled to additional compensation although

he handled more cases than plaintiff during the winding-up period after dissolution.

■■ Section 18(f) of the Uniform Partnership Act provides that unless there was an agreement otherwise or the death of a partner, "[n]o partner is entitled to remuneration for acting in the partnership business." (Ill. Rev. Stat. 1989, ch. 106½, par. 18(f).) In *Ellerby v. Spiezer* (1985), 138 Ill. App. 3d 77, 485 N.E.2d 413, the court found that under section 18(f), a law partner may not be compensated for working on pending cases during the winding-up period after dissolution, although he is entitled to be reimbursed for overhead incurred during that period.

In this case, there was no evidence of an agreement to compensate a partner for working on the partnership business during the winding-up period. To wind up the partnership business, plaintiff and defendant generally completed those cases they were handling before dissolution. Although defendant handled more cases than plaintiff during this period, without an agreement otherwise, he was not entitled to compensation.

## VI

■■ Lastly, defendant argues that during trial, he was prejudiced when the judge changed a previous ruling striking certain portions of his counterclaim. Defendant apparently seeks a new trial on this basis although he did not support this argument with citation to authority. We note from a review of the record that the rulings were interlocutory and could have been changed at any time prior to the entry of final judgment. Accordingly, this argument is without merit.

Affirmed.

GORDON and McNULTY, JJ., concur.