(No. 73015.—■■■■)

JOHN W. FLYNN, Appellee, v. ERWIN COHN et al., Appellants.

*Opinion filed December 4, 1992.—Rehearing denied February 1, 1993.*

HEIPLE, J., specially concurring.

MILLER, C.J., joined by FREEMAN, J., concurring in part and dissenting in part.

Cohn & Cohn, of Chicago (Charles A. Cohn, of counsel, and Erwin Cohn, *pro se*), for appellants.

Regas, Frezados & Harp, of Chicago (Peter G. Frezados, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

This appeal originates from John W. Flynn's (plaintiff's) action in the Cook County circuit court, where he sought an accounting, and his former law partner, Erwin Cohn (defendant), filed a counterclaim, after the dissolution of their two-partner law firm of Cohn & Flynn (partnership). Following a bench trial, where judgment was entered in favor of plaintiff, the appellate court affirmed. (220 Ill. App. 3d 393.) Thereafter, this court granted defendant's petition for leave to appeal (134 Ill. 2d R. 315).

Three issues are presented for our review: (1) whether defendant waived his Rule 220 objection to the testimony of Nicholas Burke, the plaintiff's expert; (2) whether the overhead formula adopted by the trial court equitably distributes the overhead expense incurred by the partners for the period after dissolution; and (3) whether equitable principles require defendant to be compensated for his services rendered during the wind-

ing-up period. Because of this court's resolution of the second issue presented, it is unnecessary to address the third issue.

In 1971, the parties entered into an oral partnership agreement to practice law, and to divide revenues and expenses equally. On April 1, 1987, plaintiff and defendant agreed to dissolve the partnership, and during the subsequent winding-up period, plaintiff handled 37 cases generating $37,000 in fees, while defendant handled 140 cases generating $531,233 in fees. Plaintiff then filed for an accounting to recover his share of the fees received on the partnership's cases after dissolution; defendant counterclaimed, asking that each party receive the fees on the cases that he individually retained after the dissolution. The trial court, after an evidentiary hearing, ordered both parties to prepare an accounting of expenses and fees for the period after dissolution. At trial, plaintiff called Nicholas Burke, a CPA, to testify. Defendant objected because plaintiff had failed to disclose his expert's identity until that same week, thereby violating this court's Rule 220 (134 Ill. 2d R. 220). Consequently, the trial judge offered defendant the opportunity to depose Burke before he testified. Defendant deposed Burke that morning, and trial proceeded that afternoon. Burke testified that he had prepared a formula to determine each partner's share of the overhead incurred on cases concluded after dissolution.

Burke determined that the partnership's overhead allowance was 62.64% of the gross income, based on a review of its tax returns for the previous five years. Burke then prepared the accounting, using a formula that he had adopted. His formula allegedly determined the overhead incurred on a case after dissolution in relation to how many months the case was pending. Burke explained that use of his formula would reimburse the partner who completed the case for the other partner's

share of the post-dissolution overhead. Using his formula, Burke concluded that defendant was entitled to $319,383, while plaintiff was entitled to $248,850 of the fees received after dissolution. On the other hand, defendant's expert, Robert Vladem, determined that an alternative method should be used for calculating how the partnership's receipts are to be distributed. The trial judge found in favor of plaintiff, and ordered defendant to prepare an amended accounting using Burke's formula.

The appellate court, in affirming the trial court, distinguished *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, and its holding concerning the exclusion of experts under Rule 220. The court, analogizing the facts of this case to the circumstances in *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, reasoned that since defendant made no objection to Burke's testimony after having taken his deposition, he must have led the trial judge and plaintiff to believe that he was satisfied with the deposition and had abandoned his previous objection under Rule 220. As to Burke's formula, the court felt that the trial judge's decision to adopt it was not against the manifest weight of the evidence and, therefore, refused to disturb it. The court emphasized that the case relied upon by defendant, *In re Estate of Barbera* (1973), 55 Ill. 2d 235, did not require any specific method of allocating overhead to the exclusion of any other methods. The appellate court also rejected defendant's contention that he was entitled to additional compensation since he had handled more cases during the winding-up period than plaintiff had. It ruled that there was no evidence of an agreement to compensate a partner for his work, and that compensation is prohibited in the absence of such an agreement. Ill. Rev. Stat. 1989, ch. 106½, par. 18(f).

The first issue raised by defendant is whether plaintiff's expert, Burke, was erroneously permitted to testify

at trial. Defendant contends that Burke should have been barred since plaintiff failed to properly disclose him by the time required under Rule 220. Instead, he gave defendant only one week's notice of his intention to call Burke as a witness. Supreme Court Rule 220(b)(1) requires a party to disclose the identity of an expert witness retained to give an opinion at trial, either within 90 days after the expert's opinion first becomes known to the party or at the first pretrial conference, if the opinion is known at the time, whichever is later. (134 Ill. 2d R. 220(b)(1).) Failure to disclose an expert witness within the required time frame will result in the disqualification of the expert as a witness. (134 Ill. 2d R. 220(b)(1).) Plaintiff clearly failed to meet this requirement.

Defendant argues that our approval of the trial court's allowance of Burke's testimony would diminish the future effectiveness of Rule 220(b) in deterring surprise disclosures of expert witnesses. However, we find that there is no need to reach a decision on the merits, that being the court's ability to use discretion in applying Rule 220. Instead, we affirm the conclusion of the appellate court which, based on *Kosinski*, 192 Ill. App. 3d 1017, held that defendant had waived any objection that he may have had to Burke's testifying at trial.

Our review of the record clearly establishes that after defendant had made his initial objection to plaintiff's intention to examine Burke, the trial court asked defendant whether he wished to take Burke's deposition, and therefore postpone the proceeding at that time. The defendant, while initially expressing concern that this would delay the whole proceeding, then offered to take the deposition that day. After court was recessed in order to allow defendant to take the deposition, it resumed with the plaintiff calling Burke to testify, to which defendant acquiesced.

Accordingly, we find that defendant had an opportunity to depose Burke, did so, and never indicated that the deposition would be inadequate for him to present his full defense at trial, or that some disadvantage was being realized by reason of the tardy disclosure of plaintiff's expert. Most importantly, defendant never renewed his objection (or in any way voiced his opposition) to Burke's testimony, after the deposition. (*Cf. Phelps*, 159 Ill. App. 3d 214 (where, under a similar set of circumstances, a party moved to bar his opponent's expert under Rule 220 before his scheduled testimony, and then, after the court adjourned to give movant an opportunity to depose the expert, *the movant renewed his motion to bar him*).) Defendant's actions led the judge and plaintiff to believe that he was satisfied with the deposition and had abandoned his previous objection under Rule 220; therefore, he cannot now claim error as a result of the court's allowance of the testimony. See *Kosinski*, 192 Ill. App. 3d at 1025-26.

The second issue raised by defendant is whether the formula adopted by the trial court equitably distributes the overhead expense incurred by the partners after dissolution. Defendant argues that the judge erred when he accepted the formula advanced by plaintiff instead of the one proposed by him.

With regard to our review of the trial court's discretion here, we note that this court has previously stated:

"Although a trial court's decision is always subject to review, a reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. [Citations.] The trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. [Citations.] Consequently, where the testimony is conflicting in

a bench trial, the court's findings will not be disturbed unless they are against the manifest weight of the evidence." *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549.

After dissolution of the partnership on April 1, 1987, responsibility for the work and overhead on the partnership files was allocated between the two partners. At trial, plaintiff's expert, Burke, presented a formula which he claimed reimbursed the partner who completed work on a file for the overhead he expended since dissolution. That formula is as follows:

"fee x 62.64% x A/B x 50% = C

A = number of months case pending after dissolution

B = total number of months case pending

C = each partner's share of overhead incurred after dissolution"

Burke had determined that the historical overhead percentage of the partnership was 62.64% of gross income. His formula apportioned the overhead incurred on a case between the months the case was pending before and after dissolution. One-half of the post-dissolution overhead was credited to the partner who handled the case after dissolution, since there were two equal partners. What was remaining from the fee was then to be divided equally between plaintiff and defendant.

Defendant, however, argues that Burke's formula violates an accounting method he claims this court adopted in *Barbera*, 55 Ill. 2d 235. *Barbera* involved the accounting of a law partnership that dissolved with the death of a partner. The surviving partner handled the partnership's pending cases during the winding-up period. This court found the record supported an overhead allowance of 60% of the total fees collected after dissolution and allocated the entire overhead to the surviving partner before splitting any profits. Defendant argues that use of Burke's formula is inconsistent with *Barbera*; however,

we find that *Barbera* did not adopt a specific method to allocate overhead to the exclusion of other methods.

Defendant also argues that the trial judge ignored the testimony of his expert, Vladem, who criticized Burke's formula. Vladem testified that the overhead percentage was actually 65%, rather than 62.64%, because it should have included additional expenses. He also testified that Burke's formula violated the matching principle of accounting. Vladem further explained that the overhead incurred on a case should not have been weighed by the number of months it was pending because the fee generated was not similarly dependent on the number of months a case was pending. Finally, he contended that the overhead incurred on a case after dissolution should not have been divided in half because that had the effect of reducing overhead when the number of partners increased.

Despite Vladem's criticism, the trial judge found that Burke's testimony was more credible than Vladem's and that his decision was supported by the evidence, noting that Burke had experience accounting for law partnerships involving contingent-fee cases, unlike Vladem. Further, Vladem's compensation factor (abandoned by defendant on appeal) disregarded the partnership's overhead percentage and credited defendant for additional post-dissolution overhead based on the presumption that defendant incurred more overhead because his cases generated more income. Apparently, the compensation factor was an attempt to give defendant extra compensation but, instead, discredited Vladem's testimony. Additionally, Burke prepared plaintiff's accounting and supported its conclusions with his testimony while Vladem did not give an opinion of the propriety of defendant's accounting. Burke also testified that defendant's computation contained mathematical errors.

The trial judge was in the best position to resolve the conflicts between the experts' testimony and determine their credibility. Based on our review of the record, we agree with plaintiff that the trial and appellate courts' finding, that Burke's formula equitably distributes the post-dissolution overhead between the partners, was not against the manifest weight of the evidence.

For the reasons stated, the judgment of the appellate court, affirming the circuit court, is affirmed.

*Affirmed.*

JUSTICE HEIPLE, specially concurring:

This is an accounting suit between two lawyers named Cohn and Flynn who, after 16 years of partnership, entered into a dissolution of the law firm. The majority opinion affirms the trial court's adoption of attorney Flynn's mathematical formula for allocating profits from fees earned during the wind-up period. The formula is defective and its application produces the wrong result.

The application of a correct formula would increase the dollar figure payable to appellee Flynn and reduce the figure paid to appellant Cohn. Yet Cohn seeks reversal and Flynn seeks affirmance. In other words, if appellant Cohn were to win this appeal and a correct formula were to be applied, it would cost him a substantial amount of money in favor of his ex-partner, appellee Flynn.

Neither Cohn nor Flynn, in my opinion, presented a correct formula to the trial court. The resulting error was thereby invited by the two of them. The fundamental problem with their suggested approaches, and the approach adopted by the trial court, is that they seek to distribute losses when in actuality there are profits to be divided. Since appellant Cohn would lose money by winning the reversal he seeks and since appellee Flynn, who

would lose money by the affirmance, asks that the decision be affirmed, and since both invited the error, I concur in the result but not the rationale.

Should anyone care for a further explanation, I begin with the most basic tenant of partnership law: absent an express agreement to the contrary, profits are shared equally. Such was the agreement of the parties. This principle is not altered during the wind-up period. Therefore, any formula used to allocate profits should result in equal treatment for both parties after dissolution. Such was not obtained in this case.

The trial court found that 62.64% of gross income by the partnership was spent on overhead. Such finding was not against the manifest weight of the evidence, and should stand. The trial court then quite correctly multiplied this overhead factor times the gross profit generated by each case. So far so good. Then, however, the trial court fell into error when it began to allocate overhead between the partners. Since fees exceeded overhead, the only calculation that was needed was to deduct the overhead from the fees and then to divide the fees equally.

Thus, it follows that the trial court also erred by taking into account the number of months that cases spent in each office. Overhead is overhead; when profit exceeds it, it does not matter where overhead is spent. A proper formula would just deduct total overhead expended from gross fees collected to determine the net fees collected by each partner.

As noted in the majority opinion, during the wind-up of the partnership, Flynn handled 37 cases and generated $37,000 in fees. Cohn handled 140 cases and generated $531,233 in fees. Total gross fees of both partners amounted to $568,233. Had the overhead factor been simply applied to the gross fees to produce the total net fees and the total net fees then divided equally,

the calculations would have been as follows: overhead applied to Flynn's gross fees of $37,000 produces net fees of $13,823.20. Overhead applied to Cohn's gross fees of $531,233 produces net fees of $198,468.65. Adding the two partners' net fees together indicates total net fees subject to division of $212,291.85. Each partner was entitled to one-half of the total net fees for a net individual entitlement of $106,145.92. Since Cohn had retained net fees of $198,468.65 and Flynn had retained net fees of $13,823.20, Cohn owed Flynn $92,322.72. Such payment from Cohn to Flynn would result in equal net fees to each partner of $106,145.92. Under the formula approved by the trial and appellate courts and affirmed by this court, however, Flynn receives only $79,147.16 from Cohn, a shortfall of $13,175.56.

So, we have a paradox. The appellant, Cohn, loses his appeal but comes out $13,175.56 better off than if he had won. The appellee, Flynn, wins the appeal but comes out with $13,175.56 less than if he had lost. That, at least, is the opinion of this writer with which, most likely, Messrs. Cohn and Flynn, if I judge them correctly, will not agree.

As a final comment, I note that the majority opinion does not address Cohn's contention that equity requires extra compensation for him since he did the lion's share of the work. Suffice it to say that Cohn was correctly denied extra compensation. His claim is based on the substantial disparity of workload which he claims resulted from case-dodging by plaintiff. The trial court found that the disparity was not due to a lack of responsibility on Flynn's behalf, but rather was consistent with the historical practices of the partnership. There is no reason to disturb that finding. Absent an agreement, courts will not attempt to equalize compen-

sation between equal partners commensurate with services.

For the above reasons, I specially concur.

CHIEF JUSTICE MILLER, concurring in part and dissenting in part:

I do not agree with that portion of the majority opinion that approves the formula employed by the plaintiff's expert in determining the appropriate amount of post-dissolution overhead to be credited to the partners in winding up partnership files.

As the majority opinion explains, the plaintiff's expert, Burke, devised a mathematical formula to use in determining the partners' post-dissolution overhead. Burke's formula is as follows:

$$\text{Fee} \times 62.64\% \times A/B \times 50\% = C$$

In the formula, the figure 62.64% represents the percentage of revenue historically incurred by the partnership as overhead expense. The ratio A/B represents the number of months a file has been pending after dissolution (A) in relation to the total number of months, before and after dissolution, the file has been pending (B). The product C represents the amount to be paid as post-dissolution overhead to the partner who winds up the particular file; after the fee is reduced by C, the difference may then be divided equally between the two partners as profit. Of concern here is the 50% multiplier—in effect a divisor—used in the formula. The plaintiff explains that the multiplier is necessary to ensure that the partner who winds up a particular file is properly reimbursed by the other partner for overhead expenses incurred in the post-dissolution period. The plaintiff explains that if the partnership had had three partners, the multiplier would be 33 1/3%, if four, 25%, and so on.

During the post-dissolution period, the partners pay from their own pockets the overhead expenses they in-

cur in winding up the affairs of the partnership. Accordingly, with respect to fee-generating files concluded during that time, the partners are entitled to full reimbursement from the partnership for overhead expenses attributable to the partnership matters they have handled. See *Ellerby v. Spiezer* (1985), 138 Ill. App. 3d 77, 83; Ill. Rev. Stat. 1989, ch. 106½, par. 40.

The multiplier fails to accomplish what the plaintiff claims it does. It is clear that the formula actually computes only one partner's share of the post-dissolution overhead for a particular file, not the total amount of post-dissolution overhead incurred in connection with a file. Accordingly, it is illogical to credit the winding-up partner with only the amount calculated by the formula and to divide the remaining sum between the partners as profit. As the defendant points out, the plaintiff's formula effectively reimburses the winding-up partner for only one half of the overhead incurred on a particular file, leaving the other half to be split as profit.

An appropriate answer to this problem is simply to eliminate the 50% multiplier from the plaintiff's formula. The winding-up partner will then receive full reimbursement for post-dissolution overhead incurred with respect to a particular matter, and the amount remaining may then be divided evenly by the partners as profit.

JUSTICE FREEMAN joins in this partial concurrence and partial dissent.