MILES BEERMAN et al., Plaintiffs-Appellees and Counterdefendants-Appellees, v. LEE GRAFF et al., Indiv. and d/b/a Graff and Check Real Estate, et al., Defendants-Appellants (Lee Graff et al., Indiv. and d/b/a Graff and Check Real Estate, Counterplaintiffs-Appellants).

First District (4th Division)   No. 1—92—3936

Opinion filed August 5, 1993.—Rehearing denied August 31, 1993.

Martin A. Blumenthal, of Northfield, for appellants.

Jerome E. Boyle, of Alvin W. Block & Associates, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Miles Beerman, Nathan Swerdlove, William Woloshin, Lawrence Barezky, Mitchell Weiss, and Joseph Rush (collectively, Beerman), and the defendants, Lee Graff and David Check, individually and doing business as Graff & Check Real Estate, and

Mario Ceresini (collectively, Graff), entered into an oral partnership agreement in 1971 to own and manage a 78-unit apartment building in Hyde Park, Illinois, commonly known as the Poinsettia Apartments. The defendants were employed by the partnership to act as the managing agents of the building. Eighteen years later, the plaintiffs filed a complaint against the defendants alleging that they breached their fiduciary duties when they reported one of the apartments in the building as vacant while they had, in fact, rented the apartment. The plaintiffs further alleged that the defendants used partnership funds to construct an office in the building which was subsequently used to conduct nonpartnership business. The plaintiffs sought an accounting and injunctive relief.

The defendants' answer alleged several affirmative defenses which were all predicated upon the plaintiffs' failure to inspect the premises or to inquire about the vacant apartment. The defendants also alleged that the plaintiffs told one of the defendants that he could use and retain the apartment as a perquisite and as part of his compensation for managing the building. The defendants also filed a counterclaim alleging that the plaintiffs were unjustly enriched because they did not compensate the defendants for the value of their labor in constructing an office in the building which they used for partnership purposes. They further counterclaimed for dissolution of the partnership pursuant to the Uniform Partnership Act (Ill. Rev. Stat. 1989, ch. 106½, par. 32) and for the recovery of legal fees which the partnership paid the plaintiffs' law firm for legal work concerning partnership business. They also asked that approximately $1,000 in legal fees which were deducted from their capital accounts be apportioned to all of the partners.

Following a bench trial, the court ordered the defendants to file an accounting with respect to the rental value of the apartment from the inception of the partnership through the defendants' termination as managing agent by court order in 1989. The parties stipulated the value of the apartment rental to be $70,430. The court also entered judgment against the defendants on their counterclaims for unjust enrichment, dissolution of the partnership, and for legal fees paid to the plaintiffs' law firm. The court ordered that $1,004.77 in legal fees be allocated to the capital accounts of each partner in proportion to each partner's respective interest in the partnership.

The defendants appeal from the court's order requiring an accounting and from the amount of the damage award. The defendants further allege that the court erred by not ordering a return of the le-

gal fees which the partnership paid to the plaintiffs' law firm and in not granting a dissolution of the partnership.

At trial, William Woloshin testified that he is an attorney and practices at the law firm of Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin and London. In 1971, he and Beerman, Swerdlove, Barezky, Weiss, and Rush purchased an ownership interest in the Poinsettia Apartments building in Hyde Park, Illinois. Graff and Check managed and owned a portion of the building prior to the purchase. Graff and Check retained a 23% interest in the building. All of the partners agreed that Graff and Check would remain as managers of the building and a monthly management fee would be paid to them. Graff was primarily responsible for the day-to-day management of the building which included collecting rents and taking care of building problems. Woloshin was the liaison between Graff and the remaining partners. Graff would send him monthly statements which listed each apartment unit, the tenant's name, the rental charged, the rental collected, gross rentals for the month, expenses, and the checking account balance. Woloshin stated that he received these statements from Graff on a monthly basis for 18 years.

Woloshin visited the building only a few times a year. He believed that Graff was running the building properly. He also sporadically spoke with Graff on the telephone. He stated that he relied on Graff to operate the entire building and absolutely trusted him.

Beginning in 1987, Graff spoke of retirement and would discuss selling Poinsettia. In 1988, Graff's attorney contacted Woloshin and told him that Graff had negotiated a contract for the sale of the building to Abe Mizrahi. The purchase offer was rejected by the remaining partners because they were not willing to pay Graff the commission which Graff had structured as a part of the sale.

At one point in the negotiations, Mizrahi telephoned Woloshin and told him that while he was reviewing the records, he noticed that apartment 401 was listed as vacant. However, Mizrahi observed that there was a name on the doorbell to that apartment. Graff had told Mizrahi that apartment 401 was his apartment. Woloshin stated that he had not known that Graff was living in the apartment. Woloshin never agreed to allow Graff to use the apartment as his personal perquisite. He never approved such an arrangement. Woloshin contacted other partners and they did not know anything about Graff's arrangement either. Woloshin telephoned Graff, who told him that he was not living in the apartment at the time because it was rented. Graff told him that he had lived there in the past and insisted that Woloshin knew about it. Woloshin stated that he knew that Graff was living

there for a short time in 1971 because Graff was going through a divorce, but that the divorce had been over for 17 years. Graff told him that he had lived there for a time, kept it empty for 15 years to accommodate his wife's visiting family from New York, and that he had just rented it recently. Woloshin was told later by the building superintendent that the apartment had been rented for the past several years but a name had never gone on the sheets.

Woloshin further testified that he and another partner went to the partnership premises and found Graff's entire staff working in a room on the main floor of the building. The room measured approximately 30 by 15 feet and was fully equipped with office machinery. Woloshin stated that he never approved of the construction of an office on the premises. About three weeks prior to his visit to the building, he had a conversation with Graff in which Graff told him that he had put a desk in a linen closet of the building and was using it as an office. Upon their discovery of the newly constructed office, Woloshin and another partner immediately dispatched a letter to Graff terminating his management of the building and asking him to remove his business from the premises. Graff telephoned him and was screaming at the receptionist and threatened to kill her. Graff spoke with Woloshin and threatened to punch him out. Graff and Check were ultimately removed from their management position by court order.

Woloshin testified that the partnership had lost approximately $65,000 as a result of the vacancy in the apartment Graff had been using. His calculations were based upon the rental rate for other comparable apartments.

Mitchell Weiss testified that he is a general contractor and a partner in the Poinsettia Apartments investment. Weiss stated that in 1971 he visited the building and became aware that Graff was living in one of the apartments. He was not aware that Graff was not paying rent. Weiss never agreed that Graff could live there for free, nor had he ever agreed to treating the apartment as Graff's personal perquisite.

Lee Graff testified that at the time he became partners with the plaintiffs, he and Woloshin agreed that his compensation for managing the building would be a certain fee and an apartment to live in, free of charge, as a perquisite. David Check was also present during that conversation. Graff testified that he lived in the apartment from 1971 to 1973. He continued to maintain the apartment to accommodate his friends and family. Graff prepared the monthly statements for the apartment complex and always listed his apartment as vacant. Graff stated that he constructed an office in the building with Woloshin's

concurrence. The materials were paid for by the partnership and the labor was done, free of cost, by the manager and janitor of the building.

In 1989, Graff told Woloshin that he wanted to retire and sell the building. Woloshin told him that he did not want to sell, but if Graff was retiring, he would go along with a sale. Abe Mizrahi made them an offer which was rejected. Woloshin never discussed the vacant apartment with Graff during this time. Mizrahi sued the partnership for not closing the sale of the building. The firm of Beerman, Swerdlove, Rush, and Weiss represented the partnership in the lawsuit and was paid $6,878 from partnership funds for legal fees. Graff was never consulted with regard to payment of the legal fees. The same firm had represented the partnership prior to Mizrahi's lawsuit in another matter.

David Check testified that he is a partner in the Poinsettia Apartments investment. Check stated that he was present when Woloshin agreed to allow Graff to use an apartment in the building as a perquisite. For the last 18 years, Check had been aware that Graff was using the apartment as his perquisite.

Woloshin was recalled as a witness and testified that when his law firm represented the partnership in the lawsuit filed by Mizrahi, none of the partners who were involved with the Poinsettia Apartments investment worked on the lawsuit. Additionally, the law firm gave the partnership a discounted rate.

Graff contends on appeal that the court erred in ordering an accounting for the vacant apartment because the plaintiffs had notice of Graff's use of the apartment, no partner ever inquired as to Graff's use of the apartment, and the plaintiffs ratified Graff's use of the apartment. Graff argues that the apartment was part of his compensation and a perquisite. Additionally, he never hid the fact that the apartment was vacant and reported on monthly statements for 18 years that no rent was being collected from the use of this apartment.

Graff cites to section 12 of the Uniform Partnership Act, which imputes notice and knowledge of one partner to the partnership. Graff argues that since Check knew that he was using the apartment as a perquisite, his knowledge can be imputed to the partnership.

This argument can readily be dismissed because the court found that both Graff and Check had breached their fiduciary duty to the partnership. We do not believe that two partners acting in concert as managing partners can rely on each other's knowledge of a wrongdoing as evidence of the partnership's knowledge of the wrongdoing.

Graff supports his ratification argument by citing *Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311, for the proposition that when a principal, with knowledge of the material facts of an unauthorized transaction, takes a position which is consistent with affirmation of that transaction, the principal ratifies the act. However, as *Hofner* makes clear, whether the alleged acts of a partnership constitute a ratification is a question of fact. The only evidence which Graff points out in his brief is Woloshin's testimony that he knew Graff was living in the apartment, Weiss' testimony that he knew Graff was living in the apartment, and Check's testimony that he knew Graff was living there as a part of his compensation.

However, as we have discussed earlier in this opinion, Woloshin testified that he knew Graff was living in the apartment in 1971 because he had recently been divorced, but he was not aware that he had been living there or using the apartment for his own purposes for another 17 years. Further, Woloshin repeatedly stated that he never agreed to allowing Graff to use the apartment as a part of his compensation or as a perquisite. Moreover, Weiss testified that he knew Graff was living in the apartment in 1971 but was not aware that Graff was not paying rent. The trial judge is in the best position to resolve conflicts in the testimony and to determine the credibility of the witnesses. (*Flynn v. Cohn* (1992), 154 Ill. 2d 160, 607 N.E.2d 1236.) We do not believe that the court's finding for the plaintiffs was against the manifest weight of the evidence.

■ Graff further assumes that the partners had a duty to inquire as to Graff's use of the apartment. In his brief, Graff has ignored the duty which was at issue in this lawsuit, his fiduciary duty as managing partner. A managing partner who is responsible for virtually all of the financial aspects of the partnership has a duty, as trustee, to maintain regular and accurate records and to account for partnership transactions. (*Couri v. Couri* (1983), 95 Ill. 2d 91, 447 N.E.2d 334.) The burden of proof lies with the defendant partner in an accounting action to show by clear, convincing, unequivocal and unmistakable evidence that he has been completely frank and honest with his partner and has made full disclosure and not dealt secretly behind his partner's back. (*Peskin v. Deutsch* (1985), 134 Ill. App. 3d 48, 479 N.E.2d 1034.) Where there is a question of breach of a fiduciary duty of a managing partner, all doubts will be resolved against him, and the managing partner has the burden of proving his innocence. *Labovitz v. Dolan* (1989), 189 Ill. App. 3d 403, 545 N.E.2d 304.

The court stated that the evidence was clear and convincing that the defendants had violated their fiduciary duties to the part-

nership, as the managing partners admittedly were responsible for virtually all of the financial aspects of the partnership, by not supplying the other partners with accurate records. The court further found that the evidence was "woefully lacking" on behalf of Graff to show that an agreement was made that the apartment would be a perquisite.

■ We believe the court's finding is supported by the evidence. Essentially, Graff's only evidence in support of his position was his testimony that the apartment was a part of his compensation and the corroborating testimony of Check. On the other hand, his evidence was contradicted by the fact that he reported the apartment as "vacant" for 18 years and by Woloshin's complete denial of any agreement with Graff. Given Graff's role as managing partner and the burden of proof required of a managing partner, we do not believe the court's decision was against the manifest weight of the evidence.

■ Graff also contends that the damage award was speculative because it was based upon the rental value of the apartment for 18 years. Graff argues that given the fact that there were usually 4 to 12 vacancies in the building every month, it is possible that the apartment that he used could have been vacant, thus generating no profit.

While absolute certainty concerning the amount of damages is not necessary, the evidence must show a basis for its calculation with a fair degree of certainty. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.) Damages are speculative when uncertainty exists as to the fact of damages, rather than to the amount of such damages. *De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.

We believe the damage award was amply supported by the evidence. The parties stipulated to the rental value of the apartment. Moreover, Woloshin testified to the calculations which supported the damage award. We do not believe that Graff's argument supports a finding that the damage award was speculative.

■ Graff further argues that the court erred in finding against the defendants on their counterclaim to have the plaintiffs' law firm return fees paid to it by the partnership. Graff cites the Uniform Partnership Act, which provides that a partner cannot be remunerated for acting in the partnership business, unless there is a special agreement among the partners. Ill. Rev. Stat. 1989, ch. 106½, par. 18.

We believe the evidence supports the court's finding. The law firm of Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin and London had represented the partnership in a matter prior to the lawsuit at issue without any objection by Graff. This prior representation was evidence of an agreement among the partners to employ the law firm to represent the partnership. Thus, the subsequent representation by the same firm was not in violation of the Uniform Partnership Act.

■ Finally, Graff argues that the court erred in not granting the defendants' counterclaim for dissolution. On appeal, Graff has argued that the partnership should have been dissolved because partnerships formed without reference to any term are subject to dissolution at any time by the express will of any partner, as delineated in section 31(b) of the Uniform Partnership Act. However, in Graff's counterclaim and at trial, Graff argued under section 32(1)(f) of the Uniform Partnership Act that the partnership should be dissolved under circumstances which render a dissolution equitable. All of the testimony at trial focused on how the partnership was deadlocked on the issue of the sale of the building and the general conflicts among the partners. The court found that the evidence did not support a dissolution at this time. Graff cannot now argue dissolution using a different theory which was not presented at trial. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) A party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817.) Thus, we find that Graff has waived this argument on appeal.

Accordingly, for all of the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.