GAIL WATKINS, Plaintiff-Appellant, v. AMERICAN SERVICE INSUR-ANCE COMPANY, Defendant-Appellant.

First District (5th Division) No. 1—93—1333

Opinion filed March 31, 1994.

Bernard R. Nevoral & Associates, Ltd., of Chicago (Bernard R. Nevoral and Paul W. Pasche, of counsel), for appellant.

Brody, Gore, Fineberg & Wikoff, Ltd., of Chicago (Larry R. Wikoff, of counsel), for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Gail Watkins (Watkins), appeals from a judgment of the trial court denying with prejudice her complaint seeking declaratory judgment and damages. The complaint alleged that Watkins suffered personal injuries as a result of an occurrence with a hit-and-run automobile, as defined in an insurance policy issued by defendant, American Service Insurance Company (American Service), to Watkins. The complaint sought a declaratory judgment requiring American Service to arbitrate plaintiff's claim for injuries as well as punitive damages and attorney fees for vexatious delay in handling

plaintiff's claim. Following a bench trial, judgment was entered in favor of the defendant.

The testimony at trial disclosed the following.

Watkins testified that on September 9, 1988, at approximately 10:30 to 11 p.m., she was involved in an auto accident in the northbound lanes on the Dan Ryan Expressway near 47th Street. Watkins was driving a 1986 Ford Escort. She did not recall what the weather conditions were at the time. Two passengers were in the car; Sherdette Williams was sitting in the back seat and Roxy Winters was sitting in the passenger side in the front. Watkins was driving in the middle lane of the local side of six northbound lanes.

Watkins looked in her rearview mirror and at the same time saw a black car strike her rear left quarter panel. Watkins lost control of her car and started going to the right. She then started spinning around and hit a Buick. The Buick was to her left in front of her. After the impact, Watkins lost consciousness and consequently does not recall the location where her car came to rest. Watkins did not regain consciousness until a later time in the hospital.

On cross-examination, Watkins testified that she did not remember whether the black car was a four-door or a two-door or if the car was foreign or domestic. The front portion, or right front quarter panel of the black car, came in contact with her car. Watkins admitted that during her deposition she had stated that she was driving in the express lanes and that she did not recall what part of the black car had come in contact with her car. Watkins testified that the black car hit the back quarter panel of her car, but she did not recall if her car was hit in front of or behind the rear wheel.

Due to the impact from the black car, Watkin's car went to the right. Watkins made an attempt to change the direction of travel as the car was going to the right. Trying to control her car, Watkins attempted to go back to the left, at which point she lost control and the car started to spin to the left into the Buick. Watkins did not recall what portion of her car hit the Buick except that it was the left side. She had no idea what part of the Buick her car hit.

Watkins did not recall if she lost consciousness before she hit the Buick. Only seconds elapsed from the time that the black car hit her until the time that she hit the Buick. After her car headed back towards the Buick, she no longer saw the black car. Watkins was not aware where the black car went after it touched her car.

Sherdette Williams (Sherdette) testified that on September 9, 1988, at approximately 11 p.m., she was a passenger in a car involved in an accident on the Dan Ryan Expressway near 47th Street. Sherdette heard a real loud bump or bang and there was a heavy impact,

like something hit the car. A car had hit them on the driver's side in the back. Watkins' car then spun around in a circle and hit another car. Then, all of a sudden Watkins' car stopped. Watkins' car came to rest right by the median. Watkins was unconscious and Ms. Winters was sort of hysterical. After the car stopped, Sherdette got out. She saw the black car zooming down the expressway passing all the other cars.

The police came to the scene of the accident, but she did not recall the police asking what had happened at that time. Sherdette had been in Watkins' car prior to the accident and the car was not damaged prior to this occurrence.

On cross-examination, Sherdette testified that she and Watkins had been friends for 17 years. She stated that after the accident she was throwing beer cans out of the car. When asked if there was still beer in the car when the police arrived, Sherdette responded, "No, not that she knew of." Sherdette testified she was sober at the time of the accident. Plaintiff objected to the above questions; however, the trial court overruled the objections.

Sherdette stated that after the accident she was "a little" hysterical, but not like Ms. Winters. Prior to the accident, Sherdette was looking straight ahead. She then heard a sound and turned around. Sherdette did not actually see the impact. At the time of impact, she believed Watkins' car was in the middle or left lane. She did not recall where the Buick was when Watkins hit it. The two collisions occurred less than a block apart.

When Sherdette got out of the car, she thought it was facing south; however, she was not sure. When Sherdette got out of Watkins' car, the black car was maybe one half block north. The black car was still moving and there was other traffic around it. Less than a minute elapsed between the initial impact and the time that Sherdette got out of the car.

On redirect, Sherdette testified that she and Ms. Winters brought the beer cans into the car, that she did not believe Watkins was aware they had brought beer cans into the car, and that at no time on the evening of September 9, 1988, did Sherdette see Watkins drinking.

The plaintiff rested.

The defense called Illinois State Trooper Anthony Ripacz. Trooper Ripacz testified that on September 9, 1988, he was assigned to normal patrol on the Dan Ryan Expressway within the city limits. According to his report from that evening, he arrived at the scene of a vehicle accident at 11:13 p.m. He reported seeing two cars that appeared to have been involved in a collision. The operators of the two vehicles

were Renee Ward and Watkins. He conducted an investigation at the scene and believed that he later spoke to the drivers at the hospital. There were no passengers in the Ward car; however, there were two passengers, Sherdette Williams and Roxy Winters, in the Watkins car. Ward was driving an orange, two-door, 1985 Buick Skyhawk. Watkins was driving a blue and gray, four-door hatchback, 1983 Ford Escort.

Trooper Ripacz recorded the names of two witnesses to the incident, Matthew Rodgers and Danny T. Thomas. According to his report he found the Ward car "facing southbound in a northbound lane or far left hand lane as I would be looking northbound." The Watkins car was "in center lane facing north just stopped in the center lane." The Ward car was approximately a car length behind (south) of the Watkins car. Trooper Ripacz inquired of the occupants of the autos as to how the collision had occurred. According to his report, no one advised him that a third vehicle was involved in the incident.

On cross-examination, Trooper Ripacz testified that he did not witness the accident and that he had no independent recollection of either the occupants of the car or whether he had spoken to any of these individuals regarding the accident.

On re-cross-examination, Trooper Ripacz testified that his basis for stating only two vehicles were involved in the incident was a review of his accident report at the present time.

On examination by the court, Trooper Ripacz testified that he secured the names and addresses of the passengers and drivers but he does not recall if he received that information directly or if he got the information off their respective driver's licenses.

Matthew Rodgers (Rodgers) testified that around 11 p.m. on September 9, 1988, he observed an accident on the Dan Ryan. At the time he was driving northbound in the local lanes. He was in the middle lane. His friend Danny Thomas was in the car with him. Rodgers saw the Escort and Buick collide. When he first saw the Escort he was looking through his rearview mirror. The Escort was about 15 car lengths behind him, but it was coming up fast. As he watched the Escort come closer, he saw the Escort swerve. At the time, Rodgers was traveling 60 to 65 miles per hour. When the Escort was about five to six car lengths away from him, the Escort moved into the right lane and came past him. Rodgers watched the Escort until it came up past him. The Escort was not directly in front of him, but was to his right. He saw the Escort both in his rearview mirror and by turning his head.

Subsequently, the driver of the Escort lost control. The Escort

swerved to the right, almost embanking off the overpass wall, then swerved straight across to the left. The Escort passed in front of his car about two to three car lengths. Before the Escort passed in front of him, Rodgers did not observe any other vehicle besides his own near the Escort.

The Escort then hit a Buick. The Buick was in the left lane to Rodgers. Rodgers thinks the Escort hit the Buick twice. First, the front end of the Escort hit the front end of the Buick. The second impact occurred on the back of the vehicle and spun it to the wall. Rodgers observed the Buick and the Escort come to a stop.

Before the State troopers arrived, Rodgers witnessed two people (neither the driver) get out of the Escort. Rodgers identified himself to the trooper as a witness. From the time Rodgers first observed the Escort up until the collision he did not observe any vehicle make contact with the Escort.

When the cars stopped, the Buick was on fire. Rodgers and another individual put out the fire. Rodgers left the scene to contact the fire department and subsequently returned.

On cross-examination, Rodgers testified that the first time he saw the Escort, it was behind him and it was swerving. The following is his testimony with regard to a white car.

"Q. [Plaintiff's counsel]: Now, there was also a third car involved in this accident, is that correct?

A. Yes.

Q. And you saw that third car make impact with the Ford Escort, is that correct?

A. No, I don't remember exactly.

Q. Okay. Well, you say there was a third car involved in the accident. What did that car look like?

A. I remember—I think a white car. It was hit in the rear; busted out window, one of the taillights.

Q. And that white car would have been a car other than the Buick and Ford Escort?

A. Yes.

Q. Is it also correct that you didn't tell the police about that car?

A. Not that I remember.

Q. Okay. So you didn't tell the police or you just don't remember telling them?

A. I don't remember.

Q. Okay. Do you recall giving a deposition in this case?

A. Yes.

Q. And that was on November 9, 1992. And during that deposition *** [y]ou were asked the following question and gave the following answer.

Q. When you talked to the police did you tell them about the third car?

A. No, I don't think so.

Q. Is that the answer that you gave at that time?

A. I don't quite remember.

THE COURT: Stipulation that that is what he stated at his deposition?

[Defense counsel]: We'll stipulate to that, Judge.

***

Q. [Plaintiff's counsel]: Now, do you recall if that third car struck the Escort in the back?

A. No, it didn't.

Q. It did not?

A. No.

Q. Again in your deposition testimony at page 39—

***

Q. Page 39, Line 2.

Q. Let me hand to you other pictures that I have of the Ford Escort which contains one, two, three, four, five, six, seven pictures.

***

Q. Is that damage that you see here?

A. Okay, I said it may have been a third car also, one that struck the Escort in the back. After the last time it struck the Buick, the Escort might have been hit once.

Q. Is that the answer that you gave to that question at that time?

***

[Defense counsel]: The Defendant will stipulate that that was the question and the answer."

During redirect of Rodgers, defense counsel elicited the following testimony regarding the white car.

"Q. This white car that had an impact, did that occur—when did that occur in relationship to the impact between the Escort and the Buick?

A. It was after they impacted.

Q. When that occurred, was the Escort and the Buick, were they stopped at rest?

A. Okay, the Buick, I know it was stopped. The Escort has moved on a little farther.

Q. All right. You said something about a headlight being broken. What car had a broken headlight?

A. May have been the third car. I wasn't for sure if it was the headlight or taillight. But the driver said it was no problem, so he didn't stay there.

Q. Now, did you hear that happen?

A. Did I hear it?

Q. Yes. This white car had this collision with the white colored car [*sic*]. Did you hear that?

A. No, I didn't hear it, but he pulled over immediately with the other vehicles."

The parties stipulated that if called to testify, Danny Thomas would state the following. On September 9, 1988, at 11 p.m., he was traveling northbound on the Dan Ryan. Thomas was a passenger in a vehicle operated by Rodgers. He observed an Escort go from the right-hand lane to the left-hand lane and collide with a Buick. He did not see any vehicle collide with the Escort before it collided with the Buick.

The plaintiff presents the following four issues for review: (1) whether the decision of the trial court was contrary to the manifest weight of the evidence; (2) whether the trial court abused its discretion in allowing the admission of evidence regarding alcoholic beverages; (3) whether the trial court abused its discretion by allowing defense counsel's remarks concerning the "pretrial memorandum" during argument; and (4) whether the cumulative effect of the trial court's alleged errors required a reversal.

## I

The plaintiff argues the decision of the trial court was contrary to the manifest weight of the evidence.

The issue in the underlying case was not who was negligent, but rather, whether Watkins' car was involved in a "hit-and-run" accident which caused or contributed to her injuries. According to the terms of Watkins' automobile insurance policy with American Service, she could recover under her "uninsured motorist coverage" for damages caused by a "hit-and-run automobile." The definition of "uninsured automobile" in Watkins' policy includes a "hit-and-run automobile." A "hit-and-run automobile" is defined in the policy as follows:

"an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured \*\*\*, provided: (a) there cannot be ascertained the identity of either the operator or owner of such vehicle 'hit-and-run automobile.' "

Thus, liability under the policy is only triggered if the hit-and-run vehicle made physical contact with Watkins' car, causing bodily injury, and the identity of the driver cannot be ascertained.

■ Illinois courts have held that a claimant under an insurance policy bears the burden of proof on the question of coverage. (*Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 605-06, 192

N.E.2d 855.) This rule is in accord with the general proposition that "[i]n civil cases, the burden of proof which rests upon the party holding the affirmative of an issue is to prove the issue by a preponderance of the evidence." (*Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 640, 333 N.E.2d 50.) In this case the plaintiff bore the burden of establishing by a preponderance of the evidence that her car was hit by a "hit-and-run" automobile as defined in her policy.

In a bench trial, the decision of a trial judge will not be overturned unless it is against the manifest weight of the evidence. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318, 469 N.E.2d 183.) Unless inherently unreliable, uncontradicted testimony is not to be disregarded. (*Cosmopolitan National Bank*, 103 Ill. 2d at 315.) Unless the opposite conclusion is clearly evident, a trial judge's decision is not against the manifest weight of the evidence. (*Flynn v. Cohn* (1991), 220 Ill. App. 3d 393, 581 N.E.2d 30.) A judgment is not against the manifest weight of the evidence merely because there is sufficient evidence to support a contrary judgment. In order to satisfy that standard, the opposite conclusion must be clearly evident and a reviewing court will not overturn the judgment merely because it would have reached a different conclusion had it been the trier of fact. *Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 509, 557 N.E.2d 383.

■ Plaintiff maintains that three of the four witnesses testified that immediately before or after plaintiff's car hit the Buick, a certain car hit plaintiff's vehicle and failed to stop. Plaintiff argues that the only apparent conclusion to be drawn from the testimony is that a hit-and-run accident occurred and Watkins was entitled to judgment in her favor. We disagree and find that we must affirm the decision of the trial court.

Watkins and Sherdette testified that there was an impact to the left rear side of the plaintiff's automobile which caused it to go out of control. Plaintiff testified that she saw the impact occur in the rearview mirror. Sherdette testified she did not see the impact, but heard it happen. Plaintiff testified that she did not recall the weather conditions on the day of the accident, and her trial and deposition testimony differed as to whether she was travelling in the local or the express lanes. Both Rodgers and Thomas testified that no collision occurred between plaintiff's Escort and another vehicle before plaintiff's car went out of control and struck the Buick. Rodgers testified that he observed plaintiff's vehicle come up from behind his car, pass him up on the right, go out of control and then hit the Buick.

Plaintiff points to the fact that the testimony of Rodgers and Thomas that plaintiff's car was swerving at the time they initially saw it does not contradict plaintiff's testimony that she was first hit by the black car which caused her to swerve because it could have been the impact of the black car that caused the swerving that the witnesses saw. However, this is not the only conclusion that can be drawn from this testimony. The testimony of Rodgers and Thomas adequately supports a finding that plaintiff's car was not initially hit by a black car.

Plaintiff further argues that even if she failed to prove that she was struck in the left rear side by the black car, she nevertheless sustained her burden of proof, by virtue of Rodgers' testimony, that after she collided with the Buick she was struck by a third vehicle.

In recounting the facts earlier in this opinion, we set forth all of Rodgers' testimony with regard to the third vehicle or white car. The testimony about the white car is vague at best. At one point Rodgers clearly states that there was no impact between the white car and the Escort. Plaintiff's counsel did offer an impeachment wherein Rodgers stated at his deposition that "it *may* have been a third car, *** one that struck the Escort in the back." (Emphasis added.) The trial court's decision that Rodgers' testimony did not prove the existence of a third car by a preponderance of the evidence cannot be found to be against the manifest weight of the evidence.

Moreover, as defined in Watkins' policy, a hit-and-run automobile is "an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured." Although the testimony of the witnesses clearly indicates that Watkins was injured, there is no testimony connecting those injuries to an alleged impact after the collision with the Buick.

The trier of fact, in this case the trial judge, who has had the opportunity to observe the demeanor of the witnesses is in the best position to judge their credibility and to determine how much weight to be given their testimony. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 315, 469 N.E.2d 183.

We do not believe a conclusion opposite that of the trial court was clearly evident in this case. Accordingly, for all the reasons set forth above, we find that the trial court's decision was not against the manifest weight of the evidence.

## II

Plaintiff argues that the admission of evidence regarding intoxication was an abuse of discretion.

Defendant's counsel asked Sherdette whether after the accident

she threw beer cans out of the plaintiff's car and whether there was beer in the car when the police officer arrived. Counsel later asked Sherdette if she was sober at the time of the accident. Plaintiff's objections to these questions were overruled.

Plaintiff argues that no evidence was offered to even show alcohol on the breath of either Watkins or Sherdette and therefore the trial court improperly admitted the testimony about alcoholic beverages. In support of her position, plaintiff relies on *Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 466, 392 N.E.2d 693, which holds that questions cannot be asked which intimate to the finder of fact that a party was intoxicated unless there is supporting evidence revealing some act, action, conduct, appearance, observation, or circumstance which reveals that the conduct of the individual at and before the accident was or may have been impaired by the use of alcohol.

Defendant maintains that there was no admission of any evidence as to intoxication and argues that no question was asked by the defense as to the consumption of alcohol by the plaintiff or any witness and that counsel never asked if any person was intoxicated, but rather established that Sherdette was sober. Sherdette testified that when the car stopped: her friend was unconscious; she could still see the alleged black hit-and-run car zooming away on the expressway; and she disposed of some beer cans. Defense counsel never asked whether any of the beer cans in the plaintiff's car had been opened or consumed by any of the occupants of the car. The only question pertaining to the consumption of alcoholic beverages was asked by plaintiff's counsel, who established on redirect that Sherdette did not observe the plaintiff consume any alcoholic beverages during the course of the evening. Sherdette further testified that plaintiff was not even aware of the existence of beer cans in her car.

■ First, plaintiff based his objection on the fact that defendant was offering no expert testimony about intoxication and without that the testimony was irrelevant. Defense counsel responded, "It goes to the observations of what happened immediately after." In overruling the objection the trial court indicated that the testimony was only being admitted for that purpose.

As indicated by the trial court's comments, the relevancy of the evidence was not to intimate intoxication, but rather to show the acts of the witness immediately following the accident. Sherdette testified that when she got out of the car she was able to see the black car zooming away. Yet, she also testified that when she got out of the car she was disposing of beer cans.

Further, it is proper to cross-examine a witness as to acts or conduct on the part of the witness which are inconsistent with what would be the natural or probable course of conduct if the witness is testifying truthfully about the occurrence in dispute. (*People v. Rainford* (1965), 58 Ill. App. 2d 312, 319, 208 N.E.2d 314.) At the time Sherdette got out of the car, her friend of 17 years was unconscious, yet she chose to dispose of beer cans at that point in time. In addition, Rogers testified that when the cars stopped, the Buick was on fire. Certainly, an argument could be made about why, if the plaintiff was not at fault, the witness would be more concerned with disposing of beer cans from the car than with the fact that her friend was unconscious.

Plaintiff argues that the court's failure to find in her favor was directly attributable to the court's error in admitting Sherdette's testimony which implied the consumption of alcoholic beverages at or near the time of the collisions. Plaintiff maintains that Watkins was so prejudiced by the evidence so as to be denied a fair trial, and the error should compel this court to reverse the decision of the trial court. Although we believe that the admission of the evidence was not error, we further find that if any error did exist, it was harmless under the facts of this case.

A party is not entitled to a reversal based on ruling on evidence unless the error was substantially prejudicial and affected the outcome of trial. (*Jackson v. Pellerano* (1991), 210 Ill. App. 3d 464, 471, 569 N.E.2d 167.) Where it appears an error did not affect the outcome of trial, or where the reviewing court can see from the entire record that no harm has been done, the judgment will not be disturbed. (*Jackson*, 210 Ill. App. 3d at 471.) The burden rests with the party seeking reversal to establish prejudice. (*Jackson*, 210 Ill. App. 3d at 471.) Irrelevant evidence of drinking is only grounds for reversal if it results in prejudicing the verdict. (*Jackson*, 210 Ill. App. 3d at 470.) This was a bench trial, not a jury trial. In addition, as defendant pointed out, no evidence was offered as to whether the beer cans were empty or full, and defense counsel did not question Watkin's sobriety. Sherdette testified that she was sober and there was no testimony even alluding otherwise. The testimony of the plaintiff's two witnesses regarding the existence of the black car was contradicted by the defense witnesses. As stated above, even if the admission of the evidence could be found to be error, we find that its admission did not affect the outcome of the trial.

## III

Plaintiff argues that the trial court abused its discretion by allowing defense counsel's remarks concerning the "pre-trial memo-

randum" during closing argument.[1] During closing argument, defense counsel referred on three occasions to plaintiff's pretrial memorandum. Plaintiff asserts that the trial court was obviously affected by counsel's remarks, as the objection to the comments was overruled and judgment subsequently entered in favor of the defendant in spite of overwhelming evidence to the contrary. Further, plaintiff argues that because defense counsel directed his argument toward the proposition that plaintiff, by failing to prove the propositions in the memorandum, had failed to prove her case, Watkins was denied a fair trial.

Initially, we do not believe the mere fact that the trial court found in favor of the defendant necessarily indicates that the admission of the remarks was prejudicial or affected the outcome of the trial.

■ Plaintiff's counsel argued during closing argument that it did not matter whether the court accepted Rodgers' version of events or the plaintiff's version of events, because either indicates that a third vehicle was involved. Counsel argued that the policy does not state that the vehicle has to be the first vehicle that makes impact with the plaintiff's car, but rather it merely states that the hit-and-run automobile caused the insured's injuries.

During closing argument, defense counsel stated that the plaintiff's pretrial memorandum specified that while plaintiff was traveling in the northbound lane she was struck in the rear quarter panel by a black car and that the sole issue in dispute appeared to be whether or not physical contact was made between the plaintiff's car and the unidentified black car prior to the impact with the Buick. Defense counsel argued that it was never put in issue by the plaintiff or the defendant as to whether or not there was any impact that occurred after the impact with the Buick and that neither the plaintiff nor Sherdette testified as to any car allegedly involved in a collision subsequent to the collision with the Buick.

Plaintiff did not object to the reference to the pretrial memorandum until almost the conclusion of defense counsel's closing argument. Plaintiff's counsel objected to the continuous reference to the pretrial memorandum on the basis that the plaintiff never signed the memo and that it wasn't part of the evidence that was submitted at trial. The trial court overruled the objection. Defense counsel then

---

[1] Prior to trial, the trial judge requested that the parties provide memoranda indicating the anticipated disputed issues at trial. Although the pleading contained in the record is named a "Trial Memorandum," the parties do not dispute that the reference is to the same document.

argued that the complaint alleges that the accident was caused by a hit-and-run car and that the white car did not cause the accident or the collision. Plaintiff waived rebuttal.

A statement in closing argument regarding facts not in evidence is improper and constitutes reversible error if so prejudicial as to deprive a party of a fair trial. (*Mazurek v. Crossley Construction Co.* (1991), 220 Ill. App. 3d 416, 427, 581 N.E.2d 59.) By the time plaintiff objected to the defendant's reference to the memo, the trial judge had already heard the reference. However, in a bench trial it is presumed that the trial judge has only considered competent evidence in reaching his decision. (*People v. Gilbert* (1977), 68 Ill. 2d 252, 258, 369 N.E.2d 849.) We find no reason that this presumption should not prevail in the present case.

When rendering its decision the court noted it had reviewed the testimony of the witnesses, the exhibits, the arguments of counsel and considered the testimony of each witness and the reasonableness of their testimony in light of all of the evidence in the case. The court noted that the burden of proof was upon the plaintiff and that the plaintiff had failed to meet her burden. The court found in favor of the defendant on all counts of the complaint.

Although we find that the trial court erred in allowing the defendant to make reference to the memo in closing, we find that the error was harmless in this case. There is no evidence that defendant's argument prejudiced the plaintiff. The trial court did not restrict the plaintiff's proofs in any way based on the pretrial memorandum. The plaintiff did not present any evidence in her case in chief regarding any hit-and-run collision subsequent to her collision with the Buick. However, during cross-examination of defense witness Rodgers, plaintiff did attempt to prove a subsequent contact with a second hit-and-run vehicle. Nothing in the record indicates the trial court disregarded Rogers' testimony. Finally, plaintiff's counsel argued, without objection, that plaintiff had proved that a third vehicle had struck her car and it did not matter whether that car was the black car or the white car. Moreover, as discussed earlier, we believe that the trial court's decision was amply supported by the record. We find any error in defense counsel's reference to the pretrial memorandum to be harmless.

## IV

■ Plaintiff argues in the alternative that, if this court were to find that either of the two alleged evidentiary errors, standing alone, does not sufficiently prejudice the plaintiff's position so as to require a reversal, the cumulative effect of the trial court's errors substan-

tially prejudiced the plaintiff's case so as to require a reversal. We disagree. We find that even if we consider the admission of the testimony regarding the beer cans to be error, the cumulative effect of the errors does not require a reversal in this case. We believe the trial court's decision was sufficiently supported by the evidence and that the admission of the testimony regarding the beer cans and the reference to the pretrial memo did not affect the outcome of the trial.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

McNULTY and COUSINS, JJ., concur.